In re George E. WESSEL, Jr. aka George E. Wessel, Debtor.

**George E. WESSEL, Plaintiff,**

v.

**UNITED STATES of America, L. Winston Lee, Trustee, Defendant.**

**Bankruptcy No. 92–73283. Adv. Pro. 92–8213.**

United States Bankruptcy Court, D. South Carolina.

Sept. 17, 1993.

Helen E. Burris, Spratanburg, SC, for plaintiff.

Steven Sharpiro, Michael N. Wilcove, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for United States of America.

## ORDER

WILLIAM THURMOND BISHOP, Bankruptcy Judge.

This matter came before the Court on stipulated facts and exhibits as set forth in the pretrial order. The parties further agreed to present their legal arguments by briefs. Prior to the submission of the briefs, the parties entered into a consent order which found that the debtor's federal income tax liabilities for 1973, 1976, 1977, 1978, 1979, 1980, 1981, 1982 and 1983 are dischargeable pursuant to 11 U.S.C. § 727 and are not excepted from discharge pursuant to 11 U.S.C. § 523. The consent order further deferred judgment on any issues not resolved therein to the time of trial. L. Winston Lee, the Chapter 7 trustee, chose not to participate in this adversary proceeding and a judgment by default on all issues presented by

the adversary proceeding has been entered against him.

## FINDINGS OF FACT

1. The debtor is indebted to the Internal Revenue Service ("IRS") in the amount of approximately $26,388,000.00 for taxes. By Consent Order the parties agree that this is a dischargeable debt pursuant to 11 U.S.C. § 727 and is not excepted from discharge pursuant to 11 U.S.C. § 523. This consent order disposes of the debtor's first cause of action.

2. This is a core proceeding and this Court has jurisdiction and venue.

3. The debtor filed a Chapter 7 proceeding in this Court on June 3, 1992.

4. The debtor's discharge was entered by the Court on December 30, 1992.

5. The debt to the IRS was duly scheduled on the debtor's bankruptcy schedules, and the IRS received timely notice of this proceeding.

6. The debtor's schedules list a Group Annuity Contract, GA–4278, Certificate # 301–14–1017, Tem–Cole, Inc., existing pursuant to a plan managed by Prudential Asset Management Co., Inc.

7. Under this plan the debtor is entitled to receive monthly annuity payments in the amount of approximately $7,200.00. Pursuant to the terms of that contract, the debtor was to receive monthly guaranteed annuity payments beginning on December 1, 1984, and continuing for ninety-seven (97) months thereafter, with the remainder of the 97 payments being made to his beneficiary in the event that he died before the expiration of that time. The 97 monthly period expired in January of 1993, and the debtor is now only entitled to receive a monthly payment for so long as he lives. The right to payment terminates within the month that he dies. Prudential has the right to demand proof that the debtor is living before it is required to make a monthly distribution. The debtor's right to continue to receive the monthly annuity payment is contingent each month upon the debtor being alive within that month. As of the expiration of the 97 month period, the plan does not provide for any lump sum distribution to the debtor and the account has no balance.

8. Of the $7,200.00 annuity payment, the IRS was, prior to the debtor filing his petition in bankruptcy, levying from these payments the sum of approximately $4,447.00 per month pursuant to section 6331 of the Internal Revenue Code.

9. Throughout 1990, the debtor resided at 1813 Roosevelt Boulevard, Ypsilanti, Washtenaw County, Michigan.

10. A Notice of Federal Tax Lien with respect to the debtor's federal income tax liabilities for 1977, 1978, 1981, 1982 and 1983 was filed with the Register of Deeds of Washtenaw County of June 28, 1990.

11. A Notice of Federal Tax Lien with respect to the debtor's federal income tax liabilities for 1979 and 1980 was filed with the Register of Deed of Washtenaw County of November 5, 1990.

12. A Notice of Federal Tax Lien with respect to the debtor's federal income tax liability for 1983 was filed with the Clerk of Court of Palm Beach County on March 7, 1985.

## ISSUES

The issues before this Court, as agreed upon by the parties in the joint pre-trial order are as follows:

1. Whether the IRS holds a properly perfected security interest in the Group Annuity Contract that survives the debtor's bankruptcy discharge and the Release of Levy and, if so, how much of the debt owed to the IRS is secured by that lien.

2. Whether the Group Annuity Contract is property of the estate.

3. If the Group Annuity Contract is property of the estate, whether it is exemptible and beyond the reach of creditors.

As noted earlier, the Court has already found that the Group Annuity Contact is not property of the estate. Since the formulation of these issues for the Joint Pre–Trial Order, the Parties to this proceeding have concurred on this issue as is indicated by the briefs submitted to the Court. The parties

also now agree, as indicated by the briefs, that the issue of whether the Group Annuity Contract is exemptible and beyond the reach of creditors would not be relevant in this case given the finding that the Contract is not property of the estate. The only issue which remains is whether the IRS holds a properly perfected security interest that survives the debtor's bankruptcy discharge and the Release of Levy and, if so, how much of the debt owed to the IRS is secured by that lien.

## DISCUSSION

### I.

Plaintiff claims that he is entitled to prevail in this action on the grounds the United States has failed to prove that its federal tax liens are valid. Plaintiff bases this assertion on the contention that the record is silent as to whether notice and demand for payment were ever issued to plaintiff. Plaintiff ignores Rule 3001(f) of the Rules of Bankruptcy Practice and Procedure ("Rules"), which states that "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." In *In re South Atlantic Packers Association, Inc.*, 30 B.R. 836 (Bankr.D.S.C.1983), the Court held that a proof of claim is prima facie evidence of the secured status of a claim and that the objecting party had the burden of going forward and producing sufficient evidence to rebut the secured party's claim. *See* 30 B.R. at 839. *See also In re Stallings*, 118 B.R. 387, 390 (Bankr.D.S.C.1989) aff'd without opinion 914 F.2d 249 (4th Cir.1990). (Proof of claim prima facie evidence of federal tax liability.)

■ The proof of claim reflects that notices of federal tax liens were filed and also contains copies of the notices of the liens. In accordance with clearly established law, the proof of claim is prima facie evidence that the debtor's unpaid federal income tax liabilities for 1979–1993 are secured by valid federal liens. Plaintiff contends that the federal tax liens are not valid but has failed to establish by competent evidence and appro-

priate legal authority that the federal tax liens involved here are invalid.

Plaintiff further claims that the record contains no evidence that the IRS mailed notice and demand for payment of the federal tax liabilities to plaintiff. This, however, is incorrect as the record contains two copies of the Notices of Tax Liens filed with the Register of Deeds of Washtenaw County, Michigan. Each notice contains the following statement:

as provided by sections 6321, 6322, and 6323 of the Internal Revenue Code, notice is given that taxes (including interest and penalties) have been assessed against the following tax payer. Demand for payment of this liability has been made, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

The notices of federal tax liens were received into evidence by stipulation and the plaintiff offered no evidence to rebut the statement on the notice of federal tax lien that notice and demand for payment was made.

■ The plaintiff further argues that the statute of limitations for collection of the tax liabilities has expired. Section 6502(a)(1) of the Internal Revenue Code provides that a tax may be collected by levy or by a proceeding in court within ten years of the dates of assessment. The record shows that assessments of the plaintiff's federal income tax liabilities for 1977, 1978, 1981, 1982, and 1983, apparently based upon the liability reflected upon each such income tax return, were made in the next succeeding calendar year. In addition, subsequent assessments of audit deficiencies were made for 1977 and 1978 on October 25, 1989; for 1981 and 1982 on March 14, 1990; and for 1979 and 1980 on March 19, 1990. The ten-year collection period has not expired for any of the audit assessments or for the assessment of the plaintiff's federal income tax liability for 1983.[1] Plaintiff asserts that the tax liability

---

**1.** Prior to November 5, 1990, Section 6502 of the Internal Revenue Code provided six years after

assessment to collect unpaid federal income tax liabilities either administratively or through com-

must be assessed within three years after a return is filed. See Section 6501(a) of the Internal Revenue Code. However, numerous exceptions exist to that rule. See Sections 6503(c) and 6503(e) of the Internal Revenue Code. Section 6503(a) provides that, *inter alia*, the running of the period for assessing a tax liability shall be suspended during the time that a notice of deficiency has been issued pursuant to Section 6212 of the Internal Revenue Code and during the period that a Tax Court proceeding is ongoing. Section 6503 of the Internal Revenue Code sets forth other grounds for suspending the period for assessing the tax. Accordingly, the fact that the assessment was made more than three years after a return is filed does not necessarily mean that the tax was assessed untimely. As discussed above, the proof of claim is prima facie evidence of its validity and amount. No evidence exists to show that any tax liability was untimely assessed.

In short, plaintiff has offered nothing to show that the federal tax liens are invalid.

## II.

■ Plaintiff seeks to convince the Court that the federal tax liens do not attach to post-petition annuity payments. As the taxes were discharged in this action, it is true that these liens will not attach to property, or rights to property, that plaintiff acquires post-petition. However, plaintiff ignores caselaw which establishes that a federal tax lien attaches to a then existing right to receive property in the future. Here, there is no question that prior to the petition in bankruptcy, plaintiff had a fixed right to receive the annuity payments. In fact, there was nothing more that he had to do in order to receive them. He did not have to perform services or do anything else. Plaintiff disputes this by asserting that staying alive was a condition precedent to receiving the pay-

ments. While the debtor may be correct that staying alive is a condition precedent to receiving payment, staying alive is not a condition precedent in acquiring a property right in the annuity. The debtor acquired this prepetition, in fact years before filing, and continues to keep this right and interest as long as he is living. Being alive does not create the property right; rather, death terminates this previously created property right in the annuity. Death is not a condition precedent to acquisition but a condition subsequent. Despite the fact that the annuity payments could not be assigned or bequeathed, this does not change the fact that plaintiff had a completely fixed right in the annuity payments as of the time that the tax liens arose.

Plaintiff's reliance on Rev.Rul. 55–210 and *United States v. Long Island Drug Co.,* 115 F.2d 983 (2d Cir.1940) is misplaced. *Long Island Drug Co.* involved a levy on wages. The Court of Appeals held that the levy did not attach to subsequent wages for services not yet rendered. The Court of Appeals specifically distinguished *Long Island Drug Co.* from the situation where no future performance was required from the taxpayer. 115 F.2d at 986. Plaintiff here has to do nothing else to receive the annuity payments.

As for Rev.Rul. 55–210, that revenue ruling runs counter to plaintiff's arguments. The ruling states as follows:

> Where a taxpayer has an unqualified or fixed right, under a trust or contract, or through a chose in action, to receive periodic payments or distributions of property, a Federal Lien attaches to the taxpayer's entire right, and a notice of levy based upon such lien is effective to reach, in addition to payments or distributions then due, any subsequent payments or distributions that will become due thereafter, at

mencing a proceeding in court. On November 5, 1990, Section 6502 was amended to provide a ten-year collection period. The amendment applied to all subsequent assessments and to all assessments for which the statute of limitations had not yet expired as of November 5, 1990. As the plaintiff's federal income tax liability for 1983 was assessed on December 7, 1984, its collection period had not expired as of November

5, 1990. Certainly, the time for collecting the assessments based upon the audit deficiencies had not expired as of the amendment of Section 6502 of the Internal Revenue Code. See OBRA, 1990, P.L. 101–508, Section 11317(c) (November 5, 1990). Also, it should be noted that the collection period is suspended for the time that the automatic stay imposed by 11 U.S.C. § 362 was in effect, plus six months thereafter.

the time such payments or distributions become due.

■ As of the time that the federal tax liens arose, they attached to all plaintiff's rights to property, including his contractual right to receive the annuity payments that are the subject of this case. Even if the payments under a contract are contingent or due to be received in the future, the federal tax lien still attaches to the contractual right to receive those payments. *Randall v. H. Nakashima & Co.*, 542 F.2d 270 (5th Cir. 1976) (federal tax lien attached to contractual right to receive telephone equipment system). *Randall* noted that "it would therefore frustrate the attempt to make the tax lien provisions consistent with modern commercial concepts as codified in the Uniform Commercial Code to deny that the taxpayer's contract rights were property rights to which the federal tax lien may attach." 542 F.2d at 274. *Seaboard Surity Co. v. United States*, 306 F.2d 855 (9th Cir.1962) (federal tax lien attached to right to receive proceeds under government contract). *Seaboard* held that "these tax liens attached immediately to all rights of taxpayers under the government contract awarded December 31, 1956, including payments whenever earned ... The fact that taxpayer's rights under the contract were dependent on its performance did not affect the tax liens as far as the defendant creditors are concerned." 306 F.2d at 859. *Bigheart Pipeline Corporation v. United States*, 600 F.Supp. 50 (N.D.Okl.1984) (federal tax lien attaches to right to receive proceeds from oil and gas lease). *Bigheart* held that "under § 6321 and applicable case law, a federal tax lien may attach to a contingent interest."

■ As the federal tax liens attached to the plaintiff's right to receive the annuity payments prior to his filing his petition in bankruptcy, the federal tax liens continue to attach to his contractual right to receive annuity payments. *Dewsnup v. Timm*, —

U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), involving a mortgage on real property. The Supreme Court held that the creditor's lien passed through the bankruptcy proceedings unaffected. In its opinion, the Supreme Court specifically quoted the statement in *Farrey v. Sanderfoot*, 500 U.S. 291, ——, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991), that "ordinarily, liens and other secured interests survive bankruptcy." It is of no consequence that the underlying federal income tax liabilities are discharged in this action. As *Dewsnup* noted, the discharge only relieves the plaintiff of personal liability for the debt. It does not affect *in rem* actions against property. —— U.S. at ——, 112 S.Ct. at 778, *quoting Johnson v. Home State Bank*, 501 U.S. 78, ——, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). Similarly, it does not matter that the property involved here is personalty. *Matter of Windham*, 136 B.R. 878, 882–883 (Bankr.M.D.Fla.1992) specifically held that a lien on personalty may not be "stripped down" in a Chapter 7 bankruptcy case.

■ As it is clear that the federal tax lien remains attached to the plaintiff's contractual right to the annuity payments, the IRS may administratively seize the annuity payments even though the plaintiff has received his discharge. So long as it is encumbered by a federal tax lien, property may be administratively seized, even if it is not in the hands of the taxpayer or even if it does not even belong to the taxpayer. Section 6331(a) of the Internal Revenue Code; *United States v. Donahue Industries, Inc.*, 905 F.2d 1325, 1331 (9th Cir.1990). To the extent that the plaintiff seeks a declaratory judgment holding that payments under the annuity contract may not be seized to satisfy the tax liens in question, there are no grounds to provide such relief.[2] In this respect, it is immaterial that plaintiff may not assign his benefits under the plan. Section 6334(a) lists types of

---

2. Plaintiff's federal income tax liabilities for 1973 and 1976 were not assessed and are discharged in this case. As these liabilities were never secured by federal tax liens, they may not be collected through seizure of the annuity payments or otherwise. Likewise property in which the plaintiff acquired no interest until after he filed his bankruptcy petition will not be encumbered by the federal tax liens securing plaintiff's federal income tax liabilities for 1977–1981. However, that does not change the fact that the federal tax liens in place at the time that the plaintiff filed his petition in bankruptcy continue to attach to plaintiff's right to receive the annuity payments.

property exempt from levy. The only type of pension payments exempt from a levy is

annuity or pension payments under the Railroad Retirement Act, benefits under the Railroad Unemployment Insurance Act, special pension payments received by a person whose name has been entered on the Army, Navy, Air Force and Coast Guard Metal of Honor roll (38 U.S.C. Section 562), and annuities based on retired or retainer pay under Chapter 73 of Title 10 of the United States Code.

Section 6334(a)(6) of the Internal Revenue Code.

Section 6334(c) of the Internal Revenue Code states that no property other than what is set forth at Section 6334(a) of the Internal Revenue Code is exempt from levy. *See also* 26 C.F.R. Section 1.401(a)–13(b). (Anti-assignment provisions of Section 401(a)(13) do not preclude administrative levy pursuant to Section 6331 of the Internal Revenue Code).

▋ It is also of no consequence that on June 19, 1992, the Internal Revenue Service released the levy on the payor of the annuity, Prudential Insurance Company. As can be seen by the copy of the release of the levy attached to the pretrial order, the release was made pursuant to Section 6343 of the Internal Revenue Code. Section 6343(a)(3) of the Internal Revenue Code states that a release of a levy shall not prevent a subsequent levy on the same property. A levy is simply the administrative means of collecting property encumbered by a federal tax lien. *See National Bank of Commerce,* 472 U.S. 713, 720, 105 S.Ct. 2919, 2924 (1985). As long as the federal tax lien remains on the property, it may be seized even if a previous levy was released.

It therefore appears that there is nothing to prevent the IRS from collecting, post-petition, the annuity payments in question. It is therefore

ORDERED that notwithstanding any order of discharge entered in this case, the federal tax liens securing plaintiff's federal income tax liabilities for 1977–1983 continue to attach to all property and rights to property owned by plaintiff as of the date of the filing of the petition in bankruptcy in this case; it is further

ORDERED that notwithstanding any order of discharge entered in this case, the federal tax liens securing plaintiff's federal income tax liabilities for 1977–1983 continue to attach to plaintiff's right to receive annuity payments which Prudential Insurance Company of America is obligated to pay to plaintiff pursuant to Group Annuity Contract No. GA–4872, Certificate–No. 301–14–1017; it is further

ORDERED that notwithstanding any order of discharge entered in this case, the United States of America may, by all lawful means, collect payments due plaintiff pursuant to Group Annuity Contract No. GA–4872, Certificate No. 301–14–1017 as long as the aforementioned federal tax lien remains in effect, unless the debtor dies prior thereto.

AND IT IS SO ORDERED.