**Gary Lee PANSIER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**UNITED STATES of America, Appellant,**

v.

**Gary Lee PANSIER, Appellee.**

No. 97–C–647.
Bankruptcy No. 90–00906–JES.
Adversary No. 90–0173.

United States District Court,
E.D. Wisconsin.

Oct. 16, 1998.

---

Gary Pansier, Crivitz, WI, Pro se.

Mary E. Bielefeld, Thomas Schneider, U.S. Atty., Washington, DC, for Defendant.

***DECISION***

ADELMAN, District Judge.

The United States appeals the April 24, 1997, decision and order of the bankruptcy court, in which Bankruptcy Court Chief Judge James E. Shapiro denied the government's summary judgment motion, granted Gary Pansier's motion for contempt, and ordered the government to return an amount of money to Pansier and pay compensatory damages. The issue on appeal is whether disability payments Pansier received after filing a bankruptcy petition and receiving a discharge are considered property to which a pre-petition Internal Revenue Service tax lien extended.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

The IRS assessed unpaid income taxes against Pansier on January 23, 1989, and recorded a notice of federal tax lien on August 17, 1989, in the Wisconsin county where Pansier lived. The amount assessed for 1982 was approximately $16,000; the amount assessed for 1983 was about $48,000. The notice of lien was renewed December 6, 1994.

Pansier filed a Chapter 7 petition in bankruptcy on February 26, 1990, and received a discharge on May 30 of that year. The discharge order stated that all creditors whose debts were discharged "are enjoined from commencing, continuing or employing any action, process or act to collect, recover or offset any such debt as a personal liability of the debtor(s), or from property of the debtor(s) whether or not discharge of such debt is waived." (R. 9, Ex. D [1]).

While his bankruptcy proceedings were pending, Pansier initiated an adversary proceeding against the IRS seeking a determination of the dischargeability of his 1982 and 1983 federal tax obligations. On October 9, 1990, the bankruptcy court ordered Pansier's 1982 and 1983 federal income tax liability discharged. The bankruptcy judge noted, though, that "[n]othing in this order is determinative of the lien rights being claimed by the Internal Revenue Service against the plaintiff's pre-petition property." (R. 9, Ex. C at 2.)

Pansier had been a commercial airline pilot for Republic Airlines and its successor Northwest Airlines. Northwest provided a disability income benefit for Pansier under the its group accident and sickness insurance policy with AMEX Assurance Company, now known as GE Capital Assurance Company (I'll refer to the policy as the "AMEX policy"). (*See* Bank. R. 30, 41, Ex. 1.) The policy premiums were paid by the airline. Pansier became disabled in December 1987 due to general neuralgia in his shoulders and arms; he has been on long-term medical leave of absence continuously since then. Disability payments under the AMEX policy also began around the end of 1987.

The AMEX policy precluded Pansier from assigning his benefits and provided for continuation of payments until Pansier reached age sixty, which happened in February 1997. Pansier was required, though, to periodically give proof that he continued to be totally disabled. It is undisputed that at the time

---

1. References to the district court's record are noted as "R." References to the record in the bankruptcy court will be referred to as "Bankr. R."

he filed his bankruptcy petition, Pansier was receiving the monthly disability payments pursuant to the AMEX policy. He listed the disability payments as income in the schedules regarding his petition.

In the summer of 1996 the IRS levied on Pansier's disability payments. As a result of the levy, the IRS received two payments from the insurer totaling $5,328.66. The IRS applied $3,109.80 of the funds toward tax liabilities for years not discharged in Pansier's bankruptcy. The balance of $2,218.86, however, was applied by the IRS to the 1983 tax year.

On September 30, 1996, and October 30, 1996, Pansier filed in the bankruptcy court motions for injunctive relief against the IRS and for an order holding the IRS in contempt. He claimed that the IRS levy violated the bankruptcy court's prohibition of collection of discharged debts and sought an order requiring the IRS to cease the levies. The IRS responded with a motion for summary judgment, claiming that at the time he filed his bankruptcy petition, Pansier held a vested pre-petition right to receive the payments, and arguing that the IRS should be permitted to keep the levied proceeds applied to the 1983 tax year. Chief Judge Shapiro agreed with Pansier. He ordered the $2,218.86 returned to Pansier[2] and further ordered the IRS to pay compensatory damages in the amount of Pansier's travel costs for attending hearings on the matter, which totaled $111.60.

As stated above, the government appealed and the issue before me is whether the tax lien arising from Pansier's 1983 tax liability attached to the post-petition disability payments.

**2.** The IRS's levy of the $3,109.80 for tax liabilities for years other than 1982 or 1983 was not challenged.

**3.** Because the federal tax lien arises by operation of law if a person is unable to pay tax liability after demand is made, without the necessity of the filing of a notice of lien, this general tax lien is referred to as a "secret lien". *Suarez v. United States (In re Suarez)*, 182 B.R. 916, 919 n. 2 (Bankr.S.D.Fla.1995). "It is quite possible that a financially troubled taxpayer ... will not know whether or when a tax lien has been imposed

## II. STANDARD OF REVIEW

In a bankruptcy appeal, findings of fact are reviewed under a "clearly erroneous" standard, Fed.R.Bank.P. 7052, 8013, while conclusions of law are reviewed *de novo, In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988 (2d Cir.1990); *see In re Boomgarden,* 780 F.2d 657, 660 (7th Cir.1985). The issue on appeal is one of law, thus my review will be *de novo.*

## III. ANALYSIS

### A. The Broad Reach of a Federal Tax Lien

Title 26 U.S.C. § 6321 creates a federal tax lien when a person liable to pay any tax neglects or refuses to pay such tax after demand. The section 6321 lien arises in the amount of unpaid tax, interest, and penalties, and attaches to "all property and rights to property, whether real or personal," belonging to the taxpayer. *Id.* This language "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have.... 'Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes.'" *United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) (quoting *Glass City Bank v. United States,* 326 U.S. 265, 267, 66 S.Ct. 108, 90 L.Ed. 56 (1945)).

The lien imposed by section 6321 arises at the time assessment is made and continues until the liability is satisfied or becomes unenforceable by reason of lapse of time. 26 U.S.C. § 6322; *National Bank,* 472 U.S. at 719, 105 S.Ct. 2919. The lien attaches to the taxpayer's property and rights to property as of the moment of assessment[3]

upon all his property because.... [the lien] arises automatically on the occurrence of certain events and without express notification to the taxpayer." William T. Plumb, Jr., *Federal Tax Liens* § 2 at 10 (3d ed.1981). In his appeal briefs and in regard to the motion to compel I denied on September 29, Pansier brought up the issue of whether the government had a valid lien because it was not recorded. As the above authorities point out, however, recordation is not required. Registration merely makes the lien effective against subsequent third party creditors. 26 U.S.C. § 6323(a); *Suarez,* 182 B.R. at 919.

and, except as described below, attaches to any property acquired subsequently. *Glass City*, 326 U.S. at 267, 268, 66 S.Ct. 108; *Tillery v. United States (In re Tillery)*, 204 B.R. 575, 576 (Bank.E.D.Okla.1996). The lien does *not* attach to property or a right to property acquired by a debtor after a peti-. tion in bankruptcy has been filed and the underlying tax liability is discharged against the debtor personally. *United States v. Sanabria*, 424 F.2d 1121 (7th Cir.1970); *Leavell v. United States (In re Leavell)*, 124 B.R. 535, 540 (Bankr.S.D.Ill.1991). But IRS liens pass through bankruptcy unaffected as to property or rights to property attached *prior* to the petition's filing. *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Isom v. United States (In re Isom)*, 901 F.2d 744 (9th Cir.1990). In other words, while tax liens securing dischargeable debts do not attach to property acquired post-petition, bankruptcy does not change their effectiveness regarding property interests a debtor held pre-petition.

**B. Determination of Whether a Property Right Exists**

▇▇▇ It is well settled that state law controls the threshold determination of whether rights and interests in property exist. *National Bank*, 472 U.S. at 722, 105 S.Ct. 2919; *United States v. Librizzi*, 108 F.3d 136, 137 (7th Cir.1997). Section 6321 " 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.' " *National Bank*, 472 U.S. at 722, 105 S.Ct. 2919 (quoting *United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958)). Once, though, it has been determined that state law creates a sufficient interest of the taxpayer to satisfy the requirements of section 6321, state law becomes inoperative, and federal law determines the consequences. *National Bank*, 472 U.S. at 722, 105 S.Ct. 2919 (quoting *Bess*, 357 U.S. at 56–57, 78 S.Ct. 1054);

*Hoornstra v. United States*, 969 F.2d 530, 532 (7th Cir.1992).

**C. The Bankruptcy Court's Interpretation of State Law**

The bankruptcy court, relying primarily on *Leighton v. Leighton*, 81 Wis.2d 620, 261 N.W.2d 457 (1978), found that under Wisconsin law the levied disability payments were not "property" prior to their actual payment, which occurred post-petition. In *Leighton*, the Supreme Court of Wisconsin considered how retirement plans and veterans' disability benefits should be treated in divorce cases. The court found that both vested and unvested interests in a pension plan may be considered in the division of property because an "employee's interest in a pension plan, even one that is noncontributory on his part, is not a mere gratuity or expectancy, but an enforceable contract right." *Id.* at 635–36, 261 N.W.2d 457. The court sharply distinguished, however, between retirement plan interests and veterans' disability benefits received from the federal government. According to the state high court, a disability pension is more like compensation for impairment of one's body rather than an asset acquired or accumulated through the marital relationship. "The disability allowance is a federally-provided replacement for earning capacity lost by reason of injuries sustained while in military service." *Id.* at 636, 261 N.W.2d 457. The *Leighton* court analogized to disability benefits payable under the Social Security Act, which it had previously treated as income rather than an asset for divorce purposes:

> We similarly view the disability benefits in the case before us as income to the defendant, material only to his ability to pay alimony, if alimony were awarded. His disability allowance is to be considered as part of his earned income, literally so, and

---

"The fact that the Government may or may not file a notice of its lien in appropriate public records has nothing whatever to do with the validity of the lien against the taxpayer himself." Plumb, *supra*. (Emphasis deleted.)

One of Pansier's arguments is that the government had to pursue more formal procedures (such as a foreclosure lawsuit) than it did to

obtain his disability benefits. The tax code provides two principal tools for execution on a federal tax lien, however: (1) a lien-foreclosure lawsuit under 26 U.S.C. § 7403; or (2) administrative levy under 26 U.S.C. § 6331. *See National Bank*, 472 U.S. at 720, 105 S.Ct. 2919. In this case the IRS followed the latter course.

not as an asset to be divided between the parties.

*Id.* at 637, 261 N.W.2d 457.

According to the bankruptcy court, *Leighton* mandates that Pansier's disability payments not be characterized or considered as property at all until the payments are received, because they are more akin to income than property.

### D. Pansier's Interest in the Disability Policy

The bankruptcy court misinterpreted the role properly played by state law in federal tax-collection matters. Under *National Bank* and *Bess,* state law controls only in determining whether a taxpayer has a legal interest of some sort. *National Bank,* 472 U.S. at 722, 724 n. 8, 105 S.Ct. 2919, *Bess,* 357 U.S. at 55, 78 S.Ct. 1054. The question whether a particular state-law interest actually constitutes "property" or a "right to property" is a matter of *federal law,* however. *National Bank,* 472 U.S. at 727, 105 S.Ct. 2919; *Bess,* 357 U.S. at 56–57, 78 S.Ct. 1054.

Under Wisconsin law a third party to a contract has a recognizable right to recover under it or enforce it. *Malone by Bangert v. Fons,* 217 Wis.2d 746, 767, 580 N.W.2d 697 (Ct.App.), *review denied,* No. 96–3326, 584 N.W.2d 123 (Wis. May 18, 1998); *Goossen v. Estate of Standaert,* 189 Wis.2d 237, 249, 525 N.W.2d 314 (Ct.App.1994). "A person may enforce a contract as third-party beneficiary if the contract indicates that he or she was either specifically intended by the contracting parties to benefit from the contract or is a member of the class the parties intended to benefit." *Goossen,* 189 Wis.2d at 249, 525 N.W.2d 314.

Pansier had a third-party beneficiary contract right under the disability insurance contract—and a vested right at that. Neither the government nor Pansier disputes that the policy covered former pilots of Republic Airlines who continued to work for Northwest Airlines, and that Pansier was within this specified class of third-party beneficiaries. Neither the government nor Pansier disputes that the policy provided bene-fits if such a pilot became totally disabled and lost his license to fly, and that Pansier met this and all other requirements for receiving benefits, entitling him to payments under the contract. And neither party disputes that Pansier actually was receiving benefits both at the time of assessment and the time he filed his petition.

The bankruptcy court, though, thought that Pansier's right as a third party beneficiary was negated because the right was not assignable, terminated upon death, and had no value on the open market; the court likened the benefits to an educational degree, which the Wisconsin Supreme Court has ruled has no divisible property value in a divorce. *See DeWitt v. DeWitt,* 98 Wis.2d 44, 296 N.W.2d 761 (Ct.App.1980). The nonassignability and termination upon death aspects of Pansier's interest, however, are not dispositive. Pension benefits also conceivably may terminate upon an employee's death or be nontransferable, yet even *Leighton* recognized that the right to such benefits was an enforceable contract right and therefore constituted property.

The bankruptcy court also suggested that because Pansier's right to disability benefits could conceivably terminate—if, for example, his disability went away or if he failed to undergo regular treatment (a condition of receiving benefits)—his right to benefits could not be considered a property right under Wisconsin law. But the fact that Pansier's right to benefits could possibly be divested in the future based on the occurrence of some event, does not in any way diminish Pansier's right to benefits. Until such time as an insured voluntarily gives up his or her rights under the contract by failing to meet a condition subsequent, the insurer is bound to the policy and the insured has an enforceable right. In the absence of a divesting act by Pansier, the insurer had no right to cancel the contract of insurance. 2 Lee R. Russ & Thomas F. Segalia, *Couch on Insurance* § 30:1 (3d ed.1997). Moreover, cancellation would merely terminate any benefits prospectively. *Id.* § 30:3. In the event Pansier failed to file proof of disability down the road AMEX could not, by canceling the insurance

policy for cause, avoid liability that had already vested thereunder. *Id.* § 30:25.

### E. Characterization of This Interest Under *Federal* Law

 Pansier, then, had a vested right under state law and the AMEX policy to receive payment of future disability benefits. According to *National Bank,* that is the end of the use of state law—and of the case, for such a state-law contract right constitutes "property" or a "right to property" for purposes of an IRS lien and levy. *National Bank,* 472 U.S. at 724, 105 S.Ct. 2919. When a payment by an insurer can be enforced and can inure to the delinquent taxpayer's pecuniary benefit, then the taxpayer's right to the payment is a "right to property" under *federal law.* It is "firmly established in case law that a 'federal tax lien attaches to a then existing right to receive property in the future.'" *In re Wesche,* 193 B.R. 76, 77 (Bankr.M.D.Fla.1996) (quoting *Wessel v. United States (In re Wessel),* 161 B.R. 155, 159 (Bankr.D.S.C.1993)); *see In re Blackerby,* 208 B.R. 136, 140 (Bankr.E.D.Pa.1997) (when tax liens arise, under federal law they attach to any contractual right to receive monetary payments, even when the payments are due to be received at a future date). As soon as an enforceable right arises, the tax lien attaches. William T. Plumb, Jr., *Federal Tax Liens,* § 3(a) at 22 (3d ed.1981).

In a case very similar to this one, *Fried v. New York Life Ins. Co.,* 241 F.2d 504 (2d Cir.1957), the Second Circuit found that an IRS lien attached to monthly disability benefit payments. Fried had purchased private disability insurance, then was assessed income tax deficiencies, and next became totally and permanently disabled. The IRS levied upon the disability insurance company for Fried's payments. The insurance company, which admitted its contract liability to pay Fried $250 each month as long as he remained disabled, deposited the disability payments with the court and Fried and the government litigated who would receive them. The Second Circuit sided with the government: "Fried had a contractual right to these sums each month which the insurance company could not defeat. Therefore … the government by proper levy could require that these sums be applied upon Fried's delinquent taxes." *Id.* at 505.

*Tillery,* also nearly identical factually with the current case, concerned a debtor's disability payments received from the Civil Service Retirement and Disability Fund for government employees. As in Pansier's case, the IRS had assessed Tillery for unpaid taxes and then Tillery filed a petition in bankruptcy, on which date he was receiving disability payments. After discharge, the IRS levied upon the disability payments. *Tillery,* 204 B.R. at 576. The issue before the bankruptcy court in *Tillery* was the same as here—whether the tax lien arising prior to the petition in bankruptcy attached to the disability annuity payments. The bankruptcy court found that because at the time he filed his petition Tillery had a right to receive the pension payments, that right was a property right, and as a result the tax lien attached to the post-petition payments. *Id.* at 576–77.

Numerous other cases likewise find a contractual or other right to obtain funds or future payments to be "property" or a "right to property" for purposes of the federal tax lien statute. In *National Bank* the United States Supreme Court found that as a matter of federal law, the state-law right to withdraw money from a joint bank account is a "right to property" adequate to justify the use of a levy. *National Bank,* 472 U.S. at 724–25, n. 8, 105 S.Ct. 2919. In *Bess* the Supreme Court held that a delinquent taxpayer who had purchased life insurance policies naming another as beneficiary may not have had property or rights to property in the death proceeds but did have a property right in their cash surrender value. State law indicated that the taxpayer had a right under the policy to compel the insurer to pay the surrender value and that was all that was needed for purposes of the tax lien. The fact that under state law such a property right was exempt from creditors' liens was irrelevant. *Bess,* 357 U.S. at 55–57, 78 S.Ct. 1054. "State law defined the nature of the taxpayer's interest in the property, but the state-law consequences of that definition are of no

concern to the operation of the federal tax law." *National Bank,* 472 U.S. at 723, 105 S.Ct. 2919 (summarizing *Bess* ).

In *St. Louis Union Trust Co. v. United States,* 617 F.2d 1293, 1301–02 (8th Cir.1980), the Eighth Circuit found that a taxpayer's right to receive income from a fund in escrow with a trust company could be attached and levied by a federal tax lien. According to the court, "[t]he unqualified contractual right to receive property is itself a property right subject to seizure by levy, even though the right to payment of the installments has not matured at the time of the levy.... In the present case the Trust Company had a fixed contractual obligation to pay the Income to Stone as it was earned. The IRS could and did seize that right to satisfy his unpaid tax liabilities." *Id.* at 1302. Also, notably, in *Wisconsin (Dept. of Revenue) v. Bar Coat Blacktop, Inc.,* 640 F.Supp. 407, 412 (W.D.Wis.1986), a case involving Wisconsin law as to the interest of a taxpayer in a contract, the fact that the taxpayer's right to proceeds of the contract were dependent on its own later performance did not alter the fact that at the time the contract was accepted, the taxpayer acquired a property right for purposes of a federal tax lien. *See also Connor v. United States (In re Connor),* 27 F.3d 365 (9th Cir.1994) (debtor's statutory right to receive monthly payments from state after retirement as state supreme court justice was "property" to which federal tax lien attached pre-petition); *United States v. Rye,* 550 F.2d 682 (1st Cir.1977) (federal tax lien attached to taxpayer's right to receive alimony); *Roberts v. United States/IRS (In re Roberts),* 219 B.R. 573 (Bankr.D.Or.1997) (debtor's Social Security disability payments subject to IRS lien); *Morris v. United States (In re Morris),* 73 A.F.T.R.2d 94–862, 1993 WL 525657 (Bankr.W.D.Tenn.1993) (same); *Wessel,* 161 B.R. at 159–60 (federal tax lien attached to post-petition annuity payments because contractual right to receive those payments arose pre-petition).

The fact that an interest is terminable does not put it beyond the range of the lien; but the government's interest is subject to the same infirmities as the taxpayer's. Plumb, *supra,* § 3(a) at 23. The IRS acquires what-ever rights the taxpayer himself possesses, stepping into the taxpayer shoes. *National Bank,* 472 U.S. at 725, 105 S.Ct. 2919. That is, if Pansier had recovered and regained his pilot's license, his disability payments would have ended and the government would have stopped receiving payments pursuant to its levy. But until that happened, any right to payments that Pansier had, the government had too.

The inalienability of Pansier's rights under the disability policy likewise does not affect the federal tax lien. *See Rye,* 550 F.2d 682 (federal tax lien attached to taxpayer's right to receive alimony, even though right to alimony was not assignable); *Raihl v. United States (In re Raihl),* 152 B.R. 615, 618 (9th Cir. BAP 1993) ("The inalienability of the pension interests does not destroy their character as property."); *Wessel,* 161 B.R. at 159–60 (federal tax lien attached to post-petition annuity payments because contractual right to receive those payments arose pre-petition; immaterial that plaintiff could not assign his benefits).

Pansier points to no cases from Wisconsin or any other state where disability benefits or similar future payments under a contract were found outside the scope of the federal tax lien when the right to the payments arose pre-petition.

■ In sum, when a debtor has an unqualified right to receive certain payments, such as disability benefits, prior to the date on which he files bankruptcy, the right to receive those future payments constitutes "property," or at least a "right to property," acquired pre-petition for purposes of section 6321. *Blackerby,* 208 B.R. at 141.

## F. The Bankruptcy Court's Error

The bankruptcy court dismissed *Fried* and *Tillery* because those cases originated in New York and Oklahoma, respectively, and because the court thought *Leighton* indicated a different result under Wisconsin law. As a preliminary matter, I disagree with the bankruptcy court's reading of *Leighton. Leighton's* characterization of disability payments as not being *divisible* property in a divorce proceeding does not mean that the payments

are not property at all or that the disability policy is not a "right to property." The Wisconsin courts have policy reasons for excluding disability payments from property divisible at divorce. It does not follow that no property right at all exists in regard to a disability policy—especially one from a private policy or contract as opposed to government benefits—and its future payments. In Wisconsin a life insurance policy is property. *See Bersch v. VanKleeck,* 112 Wis.2d 594, 596–97, 334 N.W.2d 114 (1983). State law recognizes (as the United States Supreme Court did in *Bess*) two distinct property interests in a life insurance policy: ownership of the policy and the interest of the named beneficiaries in future payments. *Id.* Disability policies differ only in that the beneficiary usually is the insured himself. In Wisconsin personal injury awards also are property, as are workers' compensation awards—although both are presumed to be the individual property of an injured spouse. *Troia v. Troia,* —— Wis.2d ——, ——–——, 1998 WL 652663, *2–*3 (Ct.App. Sept. 24, 1998); *Weberg v. Weberg,* 158 Wis.2d 540, 548–50, 463 N.W.2d 382 (Ct.App.1990). *Leighton* likened disability payments to "compensation to Mr. Leighton for impairment of his body," *Leighton,* 81 Wis.2d at 636, 261 N.W.2d 457—in other words to a personal injury award. While *Leighton* treated disability payments *like* income, its import really was that the disability policy and resulting payments are presumed to be the property of an individual spouse and, like personal injury awards, not usually subject to equitable division. Moreover, even assuming that *Leighton* implies that future disability payments must be treated as income, once it is received "income" becomes "property," thus a disability policy would still generate a *"right* to property" for purposes of the tax lien.

*Leighton* affirmed that under state law an insured has *some* interest in payments from a disability insurance policy. What *Leighton* said about the *consequences* of that interest is irrelevant to the question of whether the federal tax lien attaches. It "is not material that the economic benefit to which the right pertains is not characterized as 'property' by local law." Plumb, *supra,* § 3(b) at 27.

"Were federal law not determinative of the classifier of the state-created interest, states could defeat the federal tax lien by declaring an interest not to be property, even though the beneficial incidents of property belie its classification." *In re Kimura,* 969 F.2d 806, 810 (9th Cir.1992), *quoted in Raihl,* 152 B.R. at 617. The state-law consequences for divorce purposes of a third-party beneficiary interest in disability payments simply do not come into play. The key instead is whether Pansier had any interest in the disability policy under state law. Pansier had *something* at the time he filed his petition that guaranteed future payments—the insurance company did not continue to send him money gratuitously—and that something was a third-party contract right. *Federal law* dictates that such a contract right is "property" or a "right to property" for purposes of the federal tax lien. Under federal law, as of the petition date, the federal tax lien had already attached to Pansier's right to receive future disability policy payments under the AMEX policy.

**REVERSED AND REMANDED** for further proceedings consistent with this decision.