THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Plaintiff,

v.

Eleanor M. MISCHO; United States of America; John C. Smith Jr., Defendant.

No. S 03–2362 MCE GGH.

United States District Court, E.D. California.

Feb. 14, 2005.

Kevin W. Alexander, Gordon and Rees LLP, San Diego, CA, for Plaintiff.

Jeffrey S. Swyers, United States Department of Justice Tax Division, Washington, DC, for Defendants.

John C. Smith, Jr., North Augusta, SC, pro se.

## MEMORANDUM AND ORDER

ENGLAND, District Judge.

This is an action for declaratory relief and interpleader brought by The Equitable Life Assurance Society of the United States (hereinafter "The Equitable") with respect to the disposition of certain annuity contracts originally issued to Defendant Eleanor M. Mischo and her deceased husband, James Mischo. The Internal Revenue Service ("IRS") subsequently seized and sold those contracts in order to collect unpaid federal income taxes owed by Ms. Mischo. One of the annuities in question was sold to Defendant United States of America (hereinafter "the United States").

The second contract was purchased by Defendant John C. Smith, Jr. The Equitable, through the present action, seeks a determination that the sale was invalid, that the annuity contracts were non-transferable, and that Ms. Mischo consequently remains their owner. By interpleading the funds in question, the Equitable further seeks determination from the Court on the ultimate disposition of proceeds from the annuities at issue.

The United States now moves for dismissal, pursuant to Federal Rule of Civil Procedure Rule 12(b)(1),[1] of all claims against the government on grounds that this court lacks subject matter jurisdiction to hear those claims. Alternatively, the United States moves either for dismissal of the claims against it for failure to state a claim upon which relief can be granted under Rule 12(b)(6), or for judgment on the pleadings under Rule 12(c). For the reasons set forth below, the Court finds that The Equitable lacks subject matter jurisdiction to proceed against the United States, and consequently the government's Rule 12(b)(1) motion will be granted.[2]

## BACKGROUND [3]

On October 11, 1995, The Equitable issued Annuity Contract No. 95900167, a single-premium Qualified IRA–Rollover "Joint and Survivor Annuity with Period Certain," with Eleanor Mischo as the Annuitant and James Mischo, her then husband, as the Joint Annuitant. On the same day, The Equitable also issued Annuity Contract No. 95900168, a single-premium Qualified IRA–Rollover "Joint and Survivor Annuity with Period Certain," with James Mischo as the Annuitant and Elea-

nor Mischo as Joint Annuitant. Both annuity contracts provide for monthly payments during the lives of either of the two annuitants. The contract further provides that the monthly payments would be made to beneficiaries Scott Mischo and Deeann Price, the Mischos' children, in the event both annuitants die during the specified 20–year payment period. The annuity contracts specify that they may not be "sold, assigned . . . to any person, other than The Equitable."

The Equitable made monthly payments to the Mischos until James Mischo's death on or about February 17, 1997. Thereafter, Equitable made aggregate monthly payments under both annuity contracts to Eleanor Mischo. In or about March of 1998, Eleanor Mischo elected federal income withholding of $220.00 per month. The Equitable withheld such taxes beginning with the monthly payment of April 1998.

On March 2, 1998, The Equitable received a Notice of Levy from the IRS regarding taxpayers James Mischo (deceased) and Eleanor Mischo. The Equitable honored the levy by making monthly payments of the annuity contracts to the IRS until it received a Release of Levy/Release of Property from Levy from the IRS on February 16, 1999.

On November 29, 2001, The Equitable received another Notice of Levy with respect to Eleanor Mischo. Equitable honored this levy by making the monthly annuity payments to the IRS.

On or about February 21, 2003, the IRS delivered a Notice of Seizure to Equitable

---

**1.** All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure, unless otherwise noted.

**2.** Having determined subject matter jurisdiction is lacking, the Court will not address in this Memorandum and Order the United

States' alternative requests for dismissal under Rules 12(b)(6) and 12(c).

**3.** The fact as set forth in this section are taken directly from The Equitable's complaint in this matter.

concerning Eleanor Mischo's annuity contracts. On or about May 5, 2003, the IRS sold Annuity Contract No. 95900167 to Defendant John C. Smith, Jr. and Annuity Contract No. 95900168 to the United States at a public sale.

Pursuant to the Notice of Levy, The Equitable attempted to make payment under both annuity contracts to the IRS after the date of the purported sales. The IRS, however, returned the payment to The Equitable on grounds that as purchasers of the two annuities, the United State and Smith, rather than the IRS, were entitled to their proceeds. Consequently, the IRS requested that payment be reissued to the United States and to Smith.

The Equitable thereafter filed this action and deposited its annuity payments with this Court. As indicated above, the United States now moves to dismiss this action for lack of subject matter jurisdiction.

## STANDARD

On a motion to dismiss pursuant to Rule 12(b)(1), the standard to be applied varies according to the nature of the jurisdictional challenge. A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of jurisdiction contained in the complaint as insufficient on their face to demonstrate the existence of jurisdiction ("facial attack"), or may be made as a "speaking motion" attacking the existence of subject matter jurisdiction in fact ("factual attack"). *Thornhill Publishing Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). If the motion

constitutes a facial attack, the court must consider the factual allegations of the complaint to be true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.1981); *Mortensen*, 549 F.2d at 891. If the motion constitutes a factual attack, however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill*, 594 F.2d at 733 (quoting *Mortensen*, 549 F.2d at 889).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Under Rule 15(a), when there is no "[u]ndue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment," leave to amend a complaint is to be "freely given." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Generally, leave to amend is denied only if it is clear that the deficiencies of the complaint cannot be cured by amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir.1980).

## ANALYSIS

In its complaint, The Equitable asserts that jurisdiction exists pursuant to the wrongful levy statute, 26 U.S.C. § 7426. (Complaint, ¶ 1). While The Equitable also contends that diversity may be predicated on 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1335 (interpleader) and 28 U.S.C. §§ 2201–2202 (declaratory relief) [4], as set forth below the applicability

---

**4.** Although the jurisdictional allegations of The Equitable's complaint also refer to diversity of citizenship under 28 U.S.C. § 1332, in opposing the instant motion The Equitable does not persist in claiming diversity as a basis for jurisdiction. There is no diversity jurisdiction in suits against the United States. The United States is not a "citizen" of a State for diversity purposes. *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 584 (D.C.Cir.1993)

of those statutes all depends on whether a cognizable claim can be asserted under the wrongful levy statute that operates as a waiver of the United States' sovereign immunity. The United States argues that because The Equitable lacks standing to pursue a claim under the wrongful levy statute, sovereign immunity applies and there is no jurisdiction for the assertion of The Equitable's claims against it. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (because sovereign immunity is jurisdictional in nature, unless a particular case is shown to fall outside the United States' sovereign immunity the court lacks subject matter jurisdiction).

## A. SOVEREIGN IMMUNITY

■ "The United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued." *Gilbert v. DaGrossa,* 756 F.2d 1455, 1458 (9th Cir.1985). Here, unless The Equitable can point to a federal statute as a result of which the United States has consented to suit, The Equitable's claim against the United States in this Court is barred. *See, e.g., Price v. United States General Services Admin.,* 894 F.2d 323, 324 (9th Cir.1990). 28 U.S.C. § 1346(e) specifically gives the

district courts original jurisdiction over certain civil actions against the United States. The statute specifically includes claims under 26 U.S.C § 7426, the wrongful levy statute, as one of the actions so authorized. 28 U.S.C. § 1346(e); *United States v. Wingfield,* 822 F.2d 1466 (10th Cir.1987). Sovereign immunity is waived, pursuant to 28 U.S.C. § 1346(e) and 26 U.S.C § 7426, however, only when there has been a wrongful levy on the taxpayer's property. Thus, in this matter, there is no federal jurisdiction unless the requirements for a limited waiver of sovereign immunity have been satisfied under the wrongful levy statute.[5]

## B. APPLICABILITY OF THE WRONGFUL LEVY STATUTE

The wrongful levy statute provides at 26 U.S.C. § 7426(a)(1) in pertinent part as follows:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the

---

**5.** As stated above, while The Equitable's complaint refers to several alternative bases for federal jurisdiction, any independent reliance on those alternatives is unavailing. First, the federal question statute, 28 U.S.C. § 1331, is a general jurisdictional statute which cannot and does not waive the United States' sovereign immunity. *See Hughes v. United States,* 953 F.2d 531, 539 n. 5 (9th Cir.1992); *Gilbert v. DaGrossa,* 756 F.2d 1455, 1458 (9th Cir. 1985). Secondly, neither the Declaratory Judgment Act, 28 U.S.C. § 2201, or the federal interpleader statute, 28 U.S.C. § 1335, confer subject matter jurisdiction on their own terms. The language of Section 2201 makes this clear, in providing for declaratory judgment "in a case of actual controversy within its jurisdiction." Moreover, in *Fidelity & Ca-*

*sualty Co. v. Reserve Ins. Co.,* 596 F.2d 914, 916 (9th Cir.1979), the Ninth Circuit recognized that the Declaratory Judgment Act "does not itself confer federal subject matter jurisdiction", explaining that there must be a waiver of sovereign immunity "as to the underlying aspects of the case." *Id.* at 916. In addition, with respect to the interpleader statute, The Equitable concedes that federal jurisdiction as to that claim against the United States hinges on whether there has been a wrongful levy under 26 U.S.C. § 7426. Consequently The Equitable must establish federal question jurisdiction under the wrongful levy statute before any potential declaratory judgment or interpleader claim against the United States can be entertained.

United States in a district court of the United States.

Therefore, pursuant to the express terms of the statute, a wrongful levy may be established, and the United States' sovereign immunity is waived, if three prerequisites are established: 1) the party asserting the wrongful levy claim must not be one against whom the tax is assessed; 2) that person must have an interest in or lien on the property; and 3) the property must have been wrongfully levied upon. Each of those requirements will now be addressed.

### 1. Status as Nontaxper.

■ Relief under 26 U.S.C. § 7426(a)(1) is limited to a party other than the taxpayer against whom a levy has been assessed for unpaid taxes. Clearly, The Equitable would be considered a nontaxpayer for purposes of the statute. Therefore the first prong for application of the wrongful levy statute has been satisfied.

### 2. Interest in or Lien on Property.

■ Equitable contends that it has an interest in the individual retirement annuity contracts because it was a party to the contracts, and therefore has a "legally cognizable interest in the distribution of monthly benefit payments to the annuitant and/or beneficiaries." (Opposition, 8:20–22). According to the Equitable, it has an interest in ensuring that the non-transferability provisions of its individual retirement annuity contracts are fulfilled and an interest in protecting the tax status of its annuity products. The United States, on the other hand, argues that Equitable lacks standing to sue under the wrongful levy statute because, by its own admission, "Equitable claims no interest in [the] monthly annuity payments." (Complaint, ¶ 35).

■ Only a party with a sufficient possessory interest in the property at issue may bring a claim for wrongful levy. *Allied/Royal Parking, L.P. v. United States,* 166 F.3d 1000, 1005 (9th Cir.1999). In *Frierdich v. United States,* 985 F.2d 379 (7th Cir.1993), a case cited approvingly by the Ninth Circuit in *Allied/Royal, supra,* the court found that the word "interest", as used in the wrongful levy statute, "is confined to 'specific, possessory rights'" that amount to "ownership or its near equivalents". *Id.* at 381 (internal citations omitted).

■ At most, The Equitable appears to allege that it has an interest in properly administering the annuity contracts it issues so as to safeguard certain financial benefits they provide. It claims an interest in the manner in which the benefit payments are distributed. (Opposition, 1:23–25, 8:19–9:3). This is not a specific possessory interest [6] as required for assertion of a wrongful levy claim under Section 7426. In fact, The Equitable admits in its complaint that it has no interest in the annuity funds themselves, and *Allied/Royal* makes it clear that "sufficient possessory interest in the levied funds" is necessary to confer standing to sue under Section 7426. *Allied/Royal,* 166 F.3d at 1005.

Without a sufficient "interest" in the levied property, The Equitable's assertion

---

**6.** In fact, with respect to the possessory interest to levied property, a tax levy creates a custodial relationship between the holder of the property and the United States, reducing the property to the constructive possession of the government. *Phelps v. United States,* 421 U.S. 330, 337, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975); *see also Chevron U.S.A., Inc. v. United States,* 705 F.2d 1487, 1490 (9th Cir.1983). Because The Equitable does not dispute the IRS' right to levy upon Ms. Mischo's annuity payments (and only disputes its right to seize and subsequently sell the rights to the contracts themselves, see Opposition, 10:17–19), it would appear to lack the requisite possessory interest on that ground as well.

of a wrongful levy claim fails, and its suit against the United States is precluded by virtue of sovereign immunity. Nonetheless, as will be demonstrated below, The Equitable's wrongful levy claim also fails to satisfy the final prerequisite of the statute, that the property in question be wrongfully levied upon.

### 3. The Requirement of Wrongful Levy.

According to The Equitable, while the IRS did have the right to levy upon Mischo's annuity payments,[7] that right did not extend to authorizing the IRS to seize and subsequently sell the annuity contracts themselves to third parties, namely to the United States and to Mr. Smith. The Equitable cites the non-alienation provisions contained in the annuities themselves (which, as stated above, forbid their sale or assignment) and the fact that the Internal Revenue Code, at 26 U.S.C. § 408(b)(1), provides that an individual retirement annuity "is not transferable by the owner." The Equitable contends that both these factors prevented the IRS from selling the annuities after levying upon them. Consequently it argues that the IRS' conduct following levy was wrongful pursuant to the wrongful levy statute. The Equitable's assertion in that regard is wrong.

Pursuant to 26 U.S.C. § 6321, a lien for unpaid taxes is created in favor of the United States upon all property and property rights of the taxpayer. The Internal Revenue Service is authorized to levy upon all property and rights to property belonging to the taxpayer or on which there is a lien for the payment of tax. 26 U.S.C. § 6331. Levy is defined, for purposes of Title 26 of the Internal Revenue Code, as including "the power of distraint and seizure by any means", including the sale of property or any rights thereto, whether tangible or intangible. 26 U.S.C. § 6331(b).[8] The IRS may consequently seize and sell any property upon which levy is permitted. *Id.; Myers v. United States,* 647 F.2d 591, 601 (5th Cir.1981). While 26 U.S.C. § 6334(a) exempts certain property from levy, it does not exempt individual retirement annuity contracts.

■ The Equitable nonetheless asserts that the IRS did not have authority to seize and subsequently sell individual retirement annuity contracts because, as indicated above, its annuity contracts contained a non-assignment provision and because Internal Revenue Code § 408(b) requires individual retirement annuity contracts to be non-transferable in order to retain its "IRA status." However, 26 U.S.C. § 6334(c) states that "[n]otwithstanding .any other law of the United States..., no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)." This unambiguous language limits any exemption from levy, seizure and sale to only specified items which do not include annuity contracts. It further specifies that the ex-

---

**7.** Case law supports the government's statutory right to levy on annuity contracts. *See McIntyre v. United States,* 222 F.3d 655, 660 (9th Cir.2000); *Travelers Ins. Co. v. Ratterman,* 96–1 U.S. Tax Cas. P50, 143 (S.D.Ohio 1996); *Wessel v. United States,* 161 B.R. 155, 160–61 (Bkrtcy.D.S.C.1993).

**8.** The Equitable attempts to argue that reliance on Section 6331(b) is overstated because the scope of the statute extends only to "property possessed and obligations existing" at the time of levy. According to The Equitable, because the annuity contracts have no accessible cash value, they do not fall within the purview of Section 6331(b), and that section cannot be used to justify the IRS' sale in this case. That argument is also misplaced. "The unqualified contractual right to receive property is itself a property right subject to seizure by levy, even though the right to payment of the installments has not matured at the time of the levy." *St. Louis Union Trust Co. v. United States,* 617 F.2d 1293, 1302 (8th Cir. 1980).

emption requirements trump any other provision of federal law, which would include the general provision against annuity transferability cited in Section 408(b) and relied upon by The Equitable. In short, Section 6334(c) nullifies The Equitable's argument that its contracts cannot be sold or assigned following levy.

The non-alienation provisions contained in The Equitable's annuity contracts themselves also do not prevent sale or assignment in this instance. Courts have consistently held that bars against assignment or alienation of a qualified plan are not enforceable against the IRS and do not preclude tax levy against a pension plan. *See, e.g., United States v. Snyder,* 343 F.3d 1171, 1174–75 (9th Cir.2003); *McIntyre v. United States,* 222 F.3d 655, 660 (9th Cir. 2000).

## CONCLUSION

For all the foregoing reasons, the United States' Motion to Dismiss for lack of subject matter jurisdiction is GRANTED.[9] The Equitable cannot satisfy the prerequisites of the wrongful levy statute as against the United States, and in the absence of establishing a claim under that statute there is no waiver of sovereign immunity and hence no cognizable claim against the United States. Because the Court does not believe that the jurisdictional deficiencies of The Equitable's claims against the United States can be remedied through amendment of the complaint (*See, e.g., Broughton v. Cutter Labs.,* 622 F.2d at 460), leave to amend is DENIED.

IT IS SO ORDERED.

---

9. Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefing. E.D. Cal. Local Rule 78–230(h).