NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 6, 2011[*]
Decided April 8, 2011

*Before*

JOEL M. FLAUM, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-3663

| | |
|---|---|
| In the Matter of: GARY L. PANSIER and JOAN R. PANSIER, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *Debtors.* | |
| | No. 10-C-550 |
| GARY L. PANSIER and JOAN R. PANSIER, | |
| | William C. Griesbach, |
| *Plaintiffs-Appellants,* | *Judge.* |
| *v.* | |
| WISCONSIN DEPARTMENT OF REVENUE, | |
| *Defendant-Appellee.* | |

**O R D E R**

For many years Gary and Joan Pansier have battled federal and Wisconsin authorities over unpaid income tax. See *United States v. Pansier*, 576 F.3d 726 (7th Cir. 2009); *Pansier v. United States*, No. 09-2450, ECF No. 22 (Bankr. E.D. Wis. Sept. 28, 2010); *Pansier v. IRS*, No. 98-02487 (Bankr. E.D. Wis. Sept. 29, 1999). In this round involving Wisconsin, the

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

couple received a general discharge in bankruptcy and then filed an action asking the bankruptcy court to confirm that their disputed tax debt to the state was among those discharged. On the state's motion, the bankruptcy court declined to reach the merits and dismissed the action as a sanction for the Pansiers' refusal to participate in discovery. The district court upheld that ruling but went further and concluded that the tax debt had not been discharged. We affirm the dismissal, but only on the narrower ground cited by the bankruptcy court.

The Pansiers filed a petition under Chapter 7 of the Bankruptcy Code in November 2008. At the time, Gary Pansier was in federal prison serving a 24-month sentence for tax-related crimes. The Pansiers listed the Wisconsin Department of Revenue as an unsecured creditor with a claim for approximately $275,000. That figure includes assessments for income tax plus penalties and interest dating back to 1991. The Department did not file a proof of claim. The bankruptcy court awarded the Pansiers a general discharge of their debts in May 2009, and then closed the case in June. Within weeks, however, the bankruptcy court reopened the case at the request of the Pansiers, who were not satisfied with their general discharge. (As is typical, the order does not itemize the debts forgiven by the bankruptcy, see 11 U.S.C. § 727(b)). The Pansiers then filed an adversary complaint against the Department of Revenue (which we'll refer to as the state) seeking a determination that their tax debt had been discharged. Such motions are authorized under the Bankruptcy Code and may be filed by a debtor or creditor either before discharge or after. FED. R. BANKR. P. 4007(a), (b).

In their second amended complaint the Pansiers asserted that their tax debt to Wisconsin—whatever the amount, which they still dispute—was encompassed in the general discharge because the state did not file a proof of claim. In the alternative, the Pansiers argued that the debt was not exempted from discharge by operation of 11 U.S.C. § 523(a)(1). That provision exempts tax debts from discharge to the extent that a tax return was "required" to be filed but was not, or was filed late and less than two years before commencement of the bankruptcy case. *Id*. § 523(a)(1)(B)(i), (B)(ii). The Pansiers maintain that they lived elsewhere from 1991 through 2000 (and thus were not "required" to file Wisconsin tax returns), and that they did file returns for 2001 through 2005, and for 2008. (The Pansiers are silent about 2006, and the state concedes that they did not incur any liability to Wisconsin for 2007.) In its answer the state contended, correctly, that filing a proof of claim makes no difference in deciding whether a tax debt has been discharged. *Id.* § 727(b). The state essentially maintained that, under § 523(a)(1)(B), all of the tax debt is nondischargeable because the Pansiers have always lived in Wisconsin during the years in question and thus were required to file returns every year. The few returns that were filed, the state explained, were filed late and postpetition, making the tax debts for those years exempt from discharge under § 523(a)(1)(B)(ii). In addition, the state misunderstood the

Pansiers to be asking the bankruptcy court to decide, not only whether their Wisconsin tax debt had been discharged, but also the *amount* of their liability. See *id.* § 505(a). Accordingly, the state further insisted that the Wisconsin Tax Appeals Commission already had settled the Pansiers' tax liability for the years 1995 through 1998, and that the Commission's decision precluded the bankruptcy court from revisiting whether taxes were owed for those years. See *id.* § 505(a)(2)(A).

When discovery commenced, the state sought to depose the Pansiers and also demanded documents in their possession. They responded by seeking a protective order from the bankruptcy court. They argued that the state's discovery demand was unduly burdensome because it covered documents going back 20 years, including tax forms, receipts, W-2s, mortgages, deeds, rental agreements, driver's licenses, pay stubs, utility bills, and social security records. The Pansiers insisted that they were not required to produce *anything* because the state, as the party seeking an exemption from discharge, had the burden of proof. The bankruptcy court denied the Pansiers' motion, explaining that, regardless of who carried the burden, they had to disclose any information they intended to use to support their claim that the taxes had been discharged.

Two weeks later, on the day the Pansiers were scheduled to be deposed, the state filed a motion to dismiss or, alternatively, to compel discovery. The state explained that the Pansiers had given notice that they would not attend their depositions due to what they characterized as a scheduling conflict. Moreover, they had said, they did not intend to answer any questions and instead would invoke their Fifth Amendment privilege against self-incrimination. In response the Pansiers filed their own motion to compel discovery and for sanctions, asserting that the state had failed to comply with *their* discovery requests. The bankruptcy court conducted a hearing on the motions and ordered the Pansiers to attend their depositions. The court noted that once before, in denying their motion for a protective order, it had directed the Pansiers to comply with the state's discovery requests. The court also denied the Pansiers' motion, explaining that the state's deadline for responding to their discovery requests had not yet elapsed.

Less than a week after this hearing, the state deposed the Pansiers. After giving his name, address, and limited information about his work history, Gary Pansier announced that, upon advice of his criminal counsel, he would invoke the Fifth Amendment as to "everything." His deposition continued for 40 minutes, and he invoked his right to remain silent in response to almost 100 questions. Joan Pansier's deposition began in the same manner and ended much more quickly.

The state then moved to dismiss the adversary action as a sanction for the Pansiers' refusal to participate in their depositions. See FED. R. BANKR. P. 7037(b)(2). At a hearing on that motion, the Pansiers argued that the state was "out to get" them and that agents from

the Department of Revenue had testified against Gary Pansier at his federal criminal trial. The court concluded that Gary Pansier could refuse not to answer whether he filed a previous bankruptcy case in the Eastern District of Wisconsin during the 1990s, since his answer could constitute an admission that he lived in the state at the time. But the court was unconvinced that the Pansiers had a reasonable concern about prosecution that would allow them to invoke the Fifth Amendment in response to *every* question. The court granted the state's motion to dismiss, citing the Pansiers' failure to comply with its order to participate meaningfully in discovery. See FED. R. BANKR. P. 7037(b)(2)(v).

The Pansiers appealed to the district court, see 28 U.S.C. § 158(a), which upheld the dismissal on two different bases. The court first concluded that the bankruptcy judge had not abused her discretion in dismissing as a sanction for their refusal to cooperate in discovery. In addition, the district court stated, the Pansiers' adversary action was appropriately dismissed because, as a matter of law, their Wisconsin tax debt was not discharged. For the years 2001 through 2005, as well as for 2008, the court reasoned that the Pansiers had filed their returns postpetition and thus the corresponding liabilities were made nondischargeable by § 523(a)(1)(B)(ii). For 1991 through 1995, the court accepted the state's argument that the *liability* could not be reviewed under § 505(a) because the tax debt for those years ostensibly had been litigated before the Tax Appeals Commission, yet the court did not explain why it would matter, for purposes of § 523(a), whether the *amount* of the liability was no longer subject to challenge. For 1991 through 1994, 1999, and 2000, the court continued, the Pansiers had not challenged administratively the assessments issued by the Department of Revenue for those years, which the court assumed were "binding." Again, though, the court did not explain how the question of dischargeability hinged on whether the amount of the liability was subject to further review in the bankruptcy court. The district court summed up this alternative analysis by stating that "there was no reason for the Bankruptcy Court to expend its resources determining the amount of Appellants' State tax liability."

In this court the Pansiers renew their contention that the bankruptcy judge abused her discretion by dismissing their adversary proceeding as a discovery sanction. They also challenge the district court's alternative conclusion that their Wisconsin tax debt was not discharged. Because our review in a bankruptcy appeal is plenary, we apply the same standards that the district court did in reviewing the bankruptcy court's decision. *Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010). And like the district judge, we conclude that the bankruptcy court properly exercised its discretion in dismissing the Pansiers' case based on their failure to participate in discovery.

The bankruptcy court focused on what it viewed as the Pansiers' unfounded invocation of the Fifth Amendment as a weapon to thwart the state's right to legitimate discovery. Civil litigants cannot invoke the Fifth Amendment as an obstructionist tactic,

*Ienco v. Angarone*, 429 F.3d 680, 685 (7th Cir. 2005), and thus a party that relies on the privilege as a discovery shield must establish that a truthful answer to an inquiry would "have some tendency to subject the person being asked the question to criminal liability." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663-64 (7th Cir. 2002); see *Evans v. City of Chicago*, 513 F.3d 735, 743 (7th Cir. 2008). The Pansiers did not explain to the bankruptcy judge, and do not explain in their opening brief in this court, how answering the state's questions would subject them to possible criminal liability. Their claim that § 523(a)(1) does not exempt their tax debt from discharge essentially turns on the credibility of their longstanding assertion that Nevada, not Wisconsin, was their home for most of the years in question, and the state was entitled to thoroughly vet that assertion. As the bankruptcy judge recognized, the Pansiers could not prevent inquiry into that predominant issue, and, moreover, their invocation of the Fifth Amendment arose from a belief that the state's line of inquiry was not *relevant*, not their answers might be *incriminating.* That same theme permeates their brief. Only in their reply brief do they hint at a speculative fear of future prosecution for failure to file tax returns, obstruction of justice, or perjury. While the Pansiers did not bear the burden of showing that the state intended to prosecute them based on their answers, they did need to have a reasonable fear, i.e., more than fanciful belief, that they could face prosecution. *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1151 (7th Cir. 1981). And while we recognize that caution should be exercised when contemplating sanctions for a dubious invocation of the Fifth Amendment, see *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1305 (11th Cir. 2009); *Campbell v. Gerrans*, 592 F.2d 1054, 1058 (9th Cir. 1979), we are persuaded that the bankruptcy judge gave the question careful thought. The vagueness of the Pansiers' purported fear of prosecution, their previous effort to duck their depositions for reasons unrelated to the Fifth Amendment, and their conflating this narrow privilege with other objections more pertinent to trial than discovery all support the bankruptcy court's assessment that the Pansiers were not acting in good faith.

As for the choice of sanction, Federal Rule of Civil Procedure 37(b) allows for dismissal of an action if the plaintiff "fails to obey an order to provide or permit discovery," FED. R. CIV. P. 37(b)(2)(A)(v), and we review the decision whether to impose discovery sanctions for abuse of discretion, *In re Thomas Consol. Indus., Inc.*, 456 F.3d 719, 724 (7th Cir. 2006). A district court may dismiss a case as a sanction for discovery abuse upon finding that the plaintiff, through its actions, displayed willfulness, bad faith, or fault. *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009). Once the court makes such a finding, the sanction imposed must be proportionate to the circumstances. *Maynard v. Nygren*, 372 F.3d 890, 892-93 (7th Cir. 2004); *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 672 (7th Cir. 1996). The Pansiers confuse these constraints with the stricter standard for dismissal under Rule 41(b), which requires a pattern of contumacious conduct and a showing of prejudice to the opposing party in order to justify dismissal for failure to prosecute or for noncompliance with court orders. See *Collins*, 554 F.3d at 696.

Though the bankruptcy court did not make a specific finding of willfulness, we can infer that conclusion from the record. *Aura Lamp & Lighting, Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 909-10 (7th Cir. 2003). The Pansiers' adversary complaint was not dismissed because they were unable to locate 20-year-old documents; the case was dismissed because they tried repeatedly to stop the state from asking about matters that would illuminate whether they were required to file Wisconsin tax returns. The Pansiers sought a protective order, and when that strategy failed, they simply failed to show up for their scheduled depositions. That ploy also failed, because the bankruptcy judge then compelled them to attend. So they did attend, but they refused to do more than answer preliminary questions, even though the court had instructed them to cooperate. Their willfulness is apparent.

The Pansiers argue that the bankruptcy court should not have imposed the ultimate sanction of dismissal without a warning that this penalty was under consideration. But a warning is not mandatory under Rule 37. See *In re Golant*, 239 F.3d 931, 937 n.3 (7th Cir. 2001). And, at all events, the bankruptcy court *did* warn the Pansiers about the prospect of dismissal at the hearing on the state's first motion to dismiss: "If you want to stay in this court and have your case heard, then you have to act like the plaintiffs. And the plaintiffs have to get their deposition taken if the defendant wants to take it." If a warning is warranted, one warning is enough. *In re Thomas Consol. Indus., Inc.*, 456 F.3d at 727.

Finally, the Pansiers contend that the bankruptcy court should have considered other, lesser sanctions before dismissing their adversary action, but here lesser sanctions would not have changed the Pansiers' behavior. At the hearing that led to dismissal of their action, the Pansiers said they would continue to take the Fifth Amendment and refused to accept their responsibility to produce documents and provide information to the state, despite the urging of the bankruptcy court. With the Pansiers determined to rebuff the court's orders, it is difficult to imagine a lesser sanction that would have led to their cooperation.

We thus conclude that dismissal as a sanction for discovery abuse was not an abuse of discretion. Given that determination, we decline to reach the district court's secondary rationale for upholding the dismissal. Since the discovery abuse provided a sufficient reason to dismiss the action, we reserve these other questions for another day.

AFFIRMED.