NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 19, 2011[*]
Decided December 19, 2011

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 11-2192

| | |
|---|---|
| In the Matter of: GARY L. PANSIER and JOAN R. PANSIER, *Debtors.* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| GARY LEE PANSIER and JOAN RENEE PANSIER, *Plaintiffs-Appellants,* | No. 10-C-1011 William C. Griesbach, *Judge.* |
| *v.* | |
| INTERNAL REVENUE SERVICE, *Defendant-Appellee.* | |

### O R D E R

For over a decade, Gary and Joan Pansier have wrangled with the Internal Revenue Service and the state of Wisconsin over unpaid income taxes. *See, e.g., In re Pansier*, 417 F. App'x 565 (7th Cir. 2011); *United States v. Pansier*, 576 F.3d 726 (7th Cir. 2009); *Pansier v. United States*, No. 09-2450, ECF No. 22 (Bankr. E.D. Wis. Sept. 28, 2010); *Pansier v. United States*, 225 B.R. 657 (E.D. Wis. 1998). In this appeal, the Pansiers contend that the bankruptcy

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

court erred in concluding that their federal income tax liability for the years 1995 through 2006 was not discharged by their bankruptcy. We affirm the judgment.

The current dispute dates to late 2008 when the Pansiers petitioned for relief under Chapter 7 of the Bankruptcy Code. The bankruptcy court granted a general discharge and then, in June 2009, closed the case. But as is typical under Chapter 7, the bankruptcy judge did not specify which debts had been discharged. *See* 11 U.S.C. § 727(b). The IRS and the Wisconsin Department of Revenue took the position that the Pansiers' tax debts were exempt from discharge, and thus in August 2009 the bankruptcy court reopened the case on the debtors' motion to resolve that question. The Pansiers then filed parallel adversary complaints against the IRS[1] and the Wisconsin Department of Revenue, and in both actions they sought a declaration that their unpaid taxes had been discharged. *See* FED. R. BANKR. P. 4007(a), (b). The state taxes were the subject of a previous appeal. *In re Pansier*, 417 F. App'x 565 (7th Cir. 2011). The case before us now arises from federal income taxes assessed for the years 1995 through 2006.

The adversary complaint against the IRS was not filed until November 2009. Before that, Gary Pansier had been pursuing a petition he filed in the United States Tax Court in 2006 to enjoin the IRS from levying against his income. The IRS countered that the Tax Court lacked subject-matter jurisdiction, but before that argument finally prevailed in August 2009, *see Pansier v. C.I.R.* No. 15849-06 (T.C. Aug. 11, 2009), the IRS had mistakenly asserted that the Pansiers did not have an income tax liability arising from the years 1999 through 2006. That slip would soon become a linchpin of the Pansier's adversary action in the bankruptcy court.

In bankruptcy court the Pansiers and the IRS filed cross-motions for summary judgment. The IRS relied upon 11 U.S.C. § 523(a)(1)(B), which exempts from discharge a tax "with respect to which a return, if required," was never filed or, if filed late, did not precede the bankruptcy petition by at least two years. According to the IRS, the Pansiers did not file income tax returns for 1995 through 2006 until after they had petitioned for bankruptcy. Those returns were "required," according to an IRS employee, because the Pansiers had received sufficient income to incur a tax liability in each year from 1995 through 2006. The receipt of substantial income is confirmed by the Pansiers' untimely returns, in which they themselves report unpaid income tax liability for each year.

---

[1] The Pansiers named the IRS as defendant, but a lawsuit nominally against the IRS is really a suit against the United States. *See Szopa v. United* States, 453 F.3d 455, 456 (7th Cir. 2006); *Blachy v. Butcher*, 221 F.3d 896, 909-10 (6th Cir. 2000); *Freck v. IRS*, 37 F.3d 986, 989 n.1 (3d Cir. 1994). For simplicity, we refer to the defendant as the IRS.

The Pansiers responded with a two-part argument, the first applying to the years 1995 though 1998, and the second applying to 1999 through 2006. For the earlier group of years, the Pansiers asserted that, in fact, they had filed tax returns more than two years before petitioning for bankruptcy. As evidence they pointed to a certified IRS transcript of account, which, they say, documents the receipt of returns for 1995 and 1996 on April 22, 1997, and for 1997 and 1998 on August 23, 1999. The IRS agreed that returns were deemed received on those two dates, although not returns prepared or submitted by the Pansiers. These returns, according to the IRS, were "substitute returns" authorized to be entered electronically by the IRS for taxpayers who do not file themselves. *See* 26 U.S.C. § 6020(b). The IRS produced computer printouts of the substitute returns along with affidavits from IRS employees attesting that the April 1997 and August 1999 dates correspond to the preparation of substitute returns, not the receipt of returns from the Pansiers. The bankruptcy court invited the Pansiers to submit their own affidavit attesting that they had filed the returns consistent with the dates on the IRS transcript, but the Pansiers ultimately declined that opportunity. The passage of time, they explained, had made it impossible for them to remember when they filed returns for these years.

For the years 1999 through 2006, the Pansiers did not claim to have filed timely income tax returns. Instead they argued that, because the IRS had said in the Tax Court that no income tax was owed for those years, the agency was barred by the doctrine of judicial estoppel from taking a contrary position in the bankruptcy court. In response the IRS argued that judicial estoppel could not apply because the Tax Court had not relied on the agency's misstatement, and because the misstatement resulted from a good-faith mistake.

The bankruptcy court granted summary judgment for the IRS. The judge concluded that the IRS had introduced undisputed evidence that the Pansiers were required to file income tax returns for all of the years in question but had not done so more than two years before they petitioned for bankruptcy. And as to the misstatements made by the IRS in the Tax Court, the bankruptcy judge declined to apply judicial estoppel. The judge reasoned that the Tax Court had not relied upon (or even mentioned) the misstatement in concluding that it lacked subject-matter jurisdiction. And, the bankruptcy judge continued, it would not be appropriate to apply judicial estoppel even if the misstatement arguably could have influenced the Tax Court because the misstatement was plainly an unintended blunder. The Pansiers unsuccessfully appealed this decision to the district court. *See* 28 U.S.C. § 158(a).

In this court, the Pansiers argue that the bankruptcy judge made two errors. Concerning the years 1995 through 1998, they contend that the existence of the IRS transcript of account is enough to show a disputed issue of fact about whether they filed returns for those years more than two years before petitioning for bankruptcy. And as for the years 1999 through 2006, the Pansiers argue that the bankruptcy court erred by not

estopping the IRS from claiming they have a tax liability. We review the bankruptcy court's decision under the same standard as the district court. *See Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010); *Miller v. LaSalle Bank Nat'l Assoc.*, 595 F.3d 782, 785 (7th Cir. 2010).

For the years 1995 through 1998, the evidence is undisputed that the Pansiers were obligated to file income tax returns but failed to do so until after the two-year deadline. The fact that the transcript of account shows "return received" dates of April 1997 and August 1999 does not create a triable issue of fact; the IRS submitted evidence explaining that what the agency "received" on those dates were substitute returns prepared by its own employees, not returns filed by the Pansiers. The explanation given by the IRS for entries in its own records was sufficient to support summary judgment, and to avoid that outcome the Pansiers needed to supply their own evidence demonstrating a material issue of fact for trial. *See* FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Serednyj v. Beverly Healthcare LLC*, 656 F.3d 540, 547 (7th Cir. 2011). Yet the Pansiers produced no copies of returns prepared by them in 1997 or 1999, nor did they explain why they would have filed returns again in 2008 if they previously had filed returns for those same years. And most telling, the Pansiers declined even to submit affidavits attesting that they had filed returns for 1995 through 1998 before they filed their Chapter 7 petition. Instead, they essentially intimated that the IRS employees who discussed the entries on the transcript of account are not credible, but insinuations of dishonesty cannot establish a triable issue. *See Schuster v. Lucent Tech. Inc.*, 327 F.3d 569, 578–79 (7th Cir. 2003); *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir. 1989). The record as a whole is thus amenable to one conclusion only, making summary judgment for the IRS the appropriate outcome. *See* FED. R. CIV. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."); *Outlaw v. Newkirk*, 259 F.3d 833, 841 (7th Cir. 2001) (explaining summary judgment was appropriate because "arguably inconsistent testimony" was overborne by record "as a whole").

As for the years 1999 through 2006, the application of judicial estoppel is a matter of discretion. *Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 887 (7th Cir. 2004). The doctrine is intended to prevent the appearance that a court has been hoodwinked by a clever litigant. *See New Hampshire v. Maine*, 532 U.S. 767, 750 (2001). Though not a strict formula, three factors typify those cases in which estoppel applies: (1) a party's prior and current positions are clearly inconsistent; (2) that same party previously persuaded a court to adopt its prior, inconsistent position; and (3) that party would derive an unfair advantage from changing positions unless estopped. *See id.* at 750–51; *Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011).

In this case, the bankruptcy court did not abuse its discretion in concluding that judicial estoppel would be inappropriate because the Tax Court never adopted the IRS's prior, inconsistent position as to the existence of a tax liability for the years 1999 through 2006. Thus there is no risk of contrary decisions creating the appearance that one court or another was deceived. The Tax Court never decided the amount or existence of the Pansiers' tax liability because that court lacked subject-matter jurisdiction. The erroneous representation by the IRS that the Pansiers had zero liability was irrelevant to the jurisdictional issue and was not even mentioned in the Tax Court's decision. Accordingly, the bankruptcy court did not abuse its discretion when it declined to estop the IRS from asserting that the Pansiers have a tax debt for the years 1999 through 2006.

AFFIRMED.