T.C. Memo. 2014-255

UNITED STATES TAX COURT

GARY LEE PANSIER AND JOAN RENEE PANSIER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3143-13L.                    Filed December 22, 2014.

<u>Alf R. Langan</u>, for petitioners.

<u>Frederic J. Fernandez</u> and <u>George W. Bezold</u>, for respondent.

MEMORANDUM OPINION

COHEN, <u>Judge</u>:  This case was commenced in response to two notices of
determination concerning collection action sustaining proposed levies to collect
petitioner Gary Pansier's unpaid tax liabilities for 1995 through 1998 and to
collect petitioners' unpaid tax liabilities for 1999 through 2006.  The issue for
decision is whether rejection of petitioners' offer-in-compromise (OIC) was an

[*2] abuse of discretion. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Background

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Additional facts concerning petitioners' long-pursued disputes with the Internal Revenue Service (IRS) and their conduct of this case are relevant and are set forth here in response to arguments made in their posttrial briefs. Petitioners resided in Wisconsin when the petition was filed.

Petitioner Gary Pansier (Pansier) was required to but did not file Federal tax returns for 1995 through 1998. On August 4, 2000, a statutory notice of deficiency was sent to him, but he did not file a petition in this Court for those years. The determined taxes and additions to tax totaling over $83,000 were duly assessed.

In November 2005, Pansier was indicted by a Federal grand jury on counts including obstructing the due administration of the IRS, filing false IRS forms, and passing fictitious financial instruments. In October 2007, after a jury trial, he was sentenced to 24 months' imprisonment in docket No. 07-3771 in the U.S.

**[*3]** District Court for the Eastern District of Wisconsin (District Court case). His conviction was affirmed, and the factual and procedural background was described by the Court of Appeals for the Seventh Circuit. United States v. Pansier, 576 F.3d 726 (7th Cir. 2009). Among other things, the Court of Appeals commented: "Pansier initially opted to proceed pro se and filed numerous pretrial motions, some of which were incomprehensible or irrelevant, while others, including multiple motions to dismiss the indictment, discovery motions, and a motion for bill of particulars, arguably presented substantive issues." Id. at 730.

Pansier was ordered to file returns for 1999 through 2006 and to cooperate with the IRS as a result of the judgment in the District Court case. On December 31, 2008, petitioners filed delinquent joint Federal income tax returns for 1999 through 2006. They did not pay the amounts due as shown on the returns. Instead, they petitioned for bankruptcy before they filed the returns. They were granted a general discharge in June 2009. They then challenged their tax liabilities in an adversary proceeding in the bankruptcy court, claiming that the tax liabilities for 1995 through 2006 had been discharged. The bankruptcy court concluded that their Federal tax liabilities had not been discharged. This conclusion was affirmed and the factual and procedural background was described by the Court of Appeals for the Seventh Circuit in an order filed December 19,

**[\*4]** 2011.  Pansier v. IRS (In re Pansier), 451 Fed. Appx. 593 (7th Cir. 2011).  In

that order, the Court of Appeals explained:

> For over a decade, Gary and Joan Pansier have wrangled with the
> Internal Revenue Service and the state of Wisconsin over unpaid
> income taxes.  See, e.g., In re Pansier, 417 Fed. Appx. 565 (7th Cir.
> 2011); United States v. Pansier, 576 F.3d 726 (7th Cir. 2009); Pansier
> v. United States, No. 09-2450, ECF No. 22 (Bankr. E.D. Wis. Sept.
> 28, 2010); Pansier v. United States 225 B.R. 657 (E.D. Wis. 1998).
> In this appeal, the Pansiers contend that the bankruptcy court erred in
> concluding that their federal income tax liability for the years 1995
> through 2006 was not discharged by their bankruptcy.  We affirm the
> judgment.

Id. at 594.  Referring to an erroneous concession in an earlier Tax Court case that

had been dismissed in August 2009 for lack of jurisdiction, the Court of Appeals

continued:

> In this case, the bankruptcy court did not abuse its discretion in
> concluding that judicial estoppel would be inappropriate because the
> Tax Court never adopted the IRS's prior, inconsistent position as to
> the existence of a tax liability for the years 1999 through 2006.  Thus
> there is no risk of contrary decisions creating the appearance that one
> court or another was deceived.  The Tax Court never decided the
> amount or existence of the Pansiers' tax liability because that court
> lacked subject-matter jurisdiction.  The erroneous representation by
> the IRS that the Pansiers had zero liability was irrelevant to the
> jurisdictional issue and was not even mentioned in the Tax Court's
> decision.  Accordingly, the bankruptcy court did not abuse its
> discretion when it declined to estop the IRS from asserting that the
> Pansiers have a tax debt for the years 1999 through 2006.

Id. at 597.

**[\*5]** On March 8, 2010, a Final Notice of Intent to Levy and Your Right to a Hearing was sent to Pansier for 1995 through 1998, and a Final Notice of Intent to Levy and Your Right to a Hearing was sent to petitioners for 1999 through 2006. Petitioners responded to the notices in a letter contending that the subject years were being litigated in the bankruptcy court. In order to preserve their rights, they submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, for all of the years.

From April 2010--when the Form 12153 was received by the IRS Office of Appeals (Appeals Office)--through June 29, 2011, various Appeals Office employees exchanged correspondence with petitioners concerning petitioners' contention that a hearing was premature because of the pending bankruptcy proceedings. On June 29, 2011, Settlement Officer Anthony Diamantopoulos sent a letter to petitioners scheduling a face-to-face hearing on August 5, 2011, with respect to the liabilities for 1999 through 2006. The letter stated that petitioners could not dispute the liabilities because they had had a prior opportunity to do so when they filed for bankruptcy. Petitioners responded by again contending that a hearing was premature, recounting their view of "many years of bureaucratic ineptitude", and demanding:

[*6] Because it is your duty and commitment to us as an officer of the Internal Revenue Service to "be responsive," we require a point-by-point reply to this letter in order that we can reach an understanding regarding our due process rights for tax periods 1995 through 2006. Please corroborate all of your statements with the applicable law, just as we have provided for you in this letter.

On February 17, 2012, after extensive review of petitioners' accounts and of the bankruptcy proceedings, the settlement officer noted various procedural complexities with respect to petitioners' accounts, including an earlier wrongful levy resulting in a refund due petitioners. The settlement officer sent a detailed response to petitioners, explaining that the scheduling was not premature because the bankruptcy case had been closed at the time of the March 2010 notice of levy and the automatic stay was lifted, proper assessments were made and proper notices and demands sent, and the Court of Appeals had rendered its decision and affirmed the bankruptcy court's ruling that the tax liability was not discharged. The letter stated that collection alternatives could not be considered because petitioners had not completed and submitted a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, previously sent to them. The settlement officer enclosed another copy of Form 433-A in case petitioners wished to proceed with the appeal and enclosed, as an alternative, a form for withdrawing the appeal.

**[*7]** Petitioners responded in a letter dated March 1, 2012, in which they rejected each of the settlement officer's explanations. They argued that Form 433-A did not apply to them because they were not wage earners and did not derive income from self-employment. They stated: "[W]e require an applicable form that includes the law making it mandatory for us to provide you with financial information, in order to 'proceed with our appeal.'" They also disputed the effect of the bankruptcy court rulings and demanded a face-to-face hearing in Milwaukee.

> In a letter dated March 26, 2012, the settlement officer explained:

> This is in response to your letter received on March 26, 2012 (copy enclosed) in reference to the requested Form 433-A. Please understand that the form may be used by individuals who have other income (other than wages or self-employment income). There is no separate form for individuals who are retired and on a fixed income.

> If you have any questions or need assistance in completing the form, feel free to contact me at the telephone number shown above. I have enclosed another copy for your convenience. Please provide the requested financial information (with the relevant supporting documentation listed on page 4 of the Form 433-A) if you wish consideration of collection alternatives on your Collection Due Process request. You may include any other relevant information you would like me to consider, as well.

> Provide the above information and documentation no later than April 12, 2012 (one week later than the previous deadline of April 5, 2012). Appeals will proceed to issue a notice of determination based on your

[*8] previous response(s) and information contained in the
administrative file if no additional information is submitted by
April 12, 2012.

Petitioners responded with an eight-page letter dated April 10, 2012, repeating

their positions, citing at length (but misinterpreting) court cases and statutory

authorities, and stating that CP 504 notices that instructed "[t]o prevent collection

action, please pay the current balance now" had been received in November 2009

and the balances shown had been paid. The letter enclosed copies of notices for

1999 through 2006. The enclosed notices for 1999 through 2004 showed only

interest due for those years. Petitioners' liability for each year exceeded the

interest shown on the forms.

The record is uncertain and disputed between the parties as to whether

boxes for "Amount Due" were blank when the Forms CP 504 were received by

petitioners, as they contend, or whether petitioners altered the forms to delete

other components of the current balance and the greater amounts due, as

respondent contends. Petitioners acknowledge that they

did remit money orders of $121.88 for 1999, $112.24 for 2000,
$74.31 for 2001, $95.40 for 2002, $109.73 for 2003, and $79.37 for
2004. These amounts were typed into the blank Amount Due box to
indicate what we were paying, because these were the only amounts
shown on the Account Summary, and the only amounts that appeared
under the Current Balance.

**[*9]** The Forms CP 504 for 2005 and 2006 showed amounts due of $7,270.48 and $6,764.24, respectively, and these amounts were not paid.

Petitioners stated in their April 10, 2012, letter:

We are submitting our Offer-in-Compromise which is based upon the stipulation that tax periods 1995, 1996, 1997, and 1998 are abated due to doubt as [to] collectibility and the statutory prerequisites for notice and demand were not met. The same situation applies for 1999 through 2006, and 1999 through 2004 balances due according to the CP 504 were paid on November 19, 2009. We do offer to pay the balance for 2005 and 2006 in monthly increments, paid over a 36 month period in order to avoid further appeal proceedings in the amount $389.85 totaling $14,034.72.

They again set out at length their view of the law regarding OICs and threatened further litigation. They also enclosed a Form 433-A on which they had obliterated the title and substituted "RETIRED INDIVIDUALS ON PENSION FINANCIAL STATEMENT".

On April 24, 2012, petitioners were advised that their OIC had been referred to the IRS Centralized Offer in Compromise Unit, which would research and verify the offer information petitioners had provided. However, by letters dated June 27, 2012, the settlement officer wrote to petitioners as follows:

Please be advised that Appeals has decided it no longer desires the assistance from the IRS Centralized Offer in Compromise (COIC) Unit in evaluating the appropriateness of your office in compromise. As a result, Appeals has requested and received your offer file from the COIC Unit.

[*10] Appeals retains jurisdiction on your offer in compromise because it was submitted as a collection alternative in connection with your Collection Due Process (CDP) appeal. COIC has not provided Appeals with any analysis, recommendation, or other information related to your offer that may impact or influence our final determination. If we had received such information, the law requires that we notify you of the communication or information received and give you an opportunity to respond.

Based on questionable documentation you submitted to Appeals with your offer, we do not believe it is in the government's best interest to consider a compromise at this time. Consequently, a recommendation will be made to reject your offer.

Please let us know by July 16, 2012 if you are willing to consider another payment arrangement, such as an installment agreement, in resolving this tax matter. If you are not interested in pursuing a payment plan on your outstanding liability with our office, please advise us and we will proceed to issue you a Notice of Determination on your CDP request with instructions on how to petition our determination in Tax Court. If you do not respond by July 16, 2012, a recommendation will be made to issue a Notice of Determination sustaining the proposed levy action and rejecting your offer in compromise as a collection alternative.

Petitioners responded with a 5-page, 39-paragraph recital of their continuing claims of irregularity by the IRS, again threatening a complaint for civil damages and concluding:

Your failure to respond to each issue raised in this letter will be construed as an admission on your part and utilized in any future U.S. Tax Court proceedings as evidence that your rejection of an offer-in-compromise was arbitrary, capricious, or without sound basis in fact or law.

**[*11]** In addition, your failure to provide us with an explanation as to why our offer in compromise was rejected, based on an unidentified "questionable document" theory strongly indicates a breach of the <u>ex parte</u> communication rules. You failed to notify us of the situation, or share the communication or information in question, or afford us the opportunity to respond.

Therefore, we ask that in order to cure this breach, you recuse yourself and have the case assigned to a new Appeals Officer as soon as possible, because it appears that the independence and objectivity of your decisions has been compromised, and "the appearance of independence is best assessed from the perspective or [sic] the taxpayer, not the IRS."

The notices of determination on which this case is based were sent January 8, 2013. The notice to Pansier stated that he owes over $232,000 in personal income tax for 1995 through 2006. Petitioners' joint liability was stated to be over $110,000 for 1999 through 2006. The notices included a detailed history of the administrative proceedings, including the following statement:

> The basis for rejecting the taxpayer's offer is supported by IRM section 5.8.7.7.1. It is worth noting that IRM section 5.8.7.7.2 (4) states that an offer will not be rejected on public policy grounds solely because the taxpayer was criminally prosecuted for a tax violation. The distinction made in this case is that the documentation submitted with the offer in compromise included forged or altered IRS notices to sway the Settlement Officer's decision in favor of the offer. The documents were intended to support the taxpayer's contention that liabilities were not actually owed for certain tax years, therefore, adding credence to the taxpayer's position that the amount offered was fair and in the government's best interest.

**[*12]** Apparently, similar tactics used by the taxpayer that resulted in a tax fraud conviction were used in the submission of the offer in compromise documentation.  Specifically, altered CP 504 notices for the years 1999 to 2004 were submitted reflecting only accrued interest charges, which were paid on November 23, 2009.  IRS computer records confirm that the amounts reflected on these notices are inaccurate.  Further, in analyzing the copies submitted, the actual balance due amounts were removed and changed to reflect only the computer generated accrued interest as the current balance due.  This was accomplished by completely eliminating the "Current Balance Due" and "Penalty" figures from each notice and replacing the "Amount Due" with the computer generated "Interest" amount.  The font used for the altered "Amount Due" figures does not match the computer font used for the actual "Interest" figures.

Appeals will not proceed with the evaluation or recommend acceptance of any offer in compromise from a taxpayer who submits false or inaccurate documentation.  At the very least, such actions diminish the credibility of the taxpayer and provide reason to question the authenticity of documentation relied upon by Appeals to determine the taxpayer's ability to pay.  To overlook this or to recommend acceptance of an offer from a taxpayer who engages in such tactics undermines the integrity of the Offer in Compromise Program.  Therefore, Appeals concludes that the offer in compromise submitted by the taxpayer is not in the government's best interest and is rejected.

While proceeding pro se in this case, petitioners pursued discovery, moved for summary judgment, moved for protective orders, repeatedly moved for reconsideration of the Court's orders, moved for an interlocutory appeal, proposed their own stipulation of facts, filed a pretrial memorandum citing various authorities, including rules of evidence, and otherwise disputed every step taken

**[*13]** by respondent or by the Court during the pendency of this case. Respondent filed a motion for summary judgment accompanied by a declaration of the settlement officer. Petitioners pointed out that the declaration did not include the required statement that it was executed under penalty of perjury. The motion for summary judgment and petitioners' cross-motion were denied because of a genuine dispute as to whether petitioners had altered the Forms CP 504 submitted with their OIC. Respondent also filed documents without proper redaction under Rule 27, an error that was subsequently corrected by agreement between the parties.

A few weeks before the scheduled trial date, petitioners moved for a continuance, citing Pansier's health issues. Respondent opposed the motion, arguing that it was just another attempt to delay and obstruct collection of petitioners' liabilities. The motion for continuance was denied in an order dated May 8, 2014, stating in part:

> Petitioners * * * indicate willingness to stipulate to certain matters and have raised objections to others. Documentary exhibits should be attached to the stipulation, with objections noted in it. Petitioners are obviously reluctant, for health considerations or otherwise, to appear at trial and give testimony under oath and subject to cross-examination, continuing to assert that the Court should accept at face value the many declarations that they have filed in this case.

**[\*14]** The order directed the execution of a stipulation and that each party show cause why the case should not be submitted on the stipulation. Thereafter, counsel entered an appearance for petitioners, and the case was submitted fully stipulated under Rule 122. Briefs were submitted by counsel.

## Discussion

Section 6330 provides for notice and an opportunity for a hearing before a levy proposed by the IRS to collect unpaid taxes may proceed. Under section 6330(c)(2)(A), a taxpayer may raise any relevant issue at a hearing, including "challenges to the appropriateness of collection actions", and may make "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise." Challenges to the underlying liability may be raised if the person requesting the hearing did not receive any statutory notice of deficiency for the liability or did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B). A taxpayer is expected to provide all relevant information requested by the Appeals Office for its consideration of the facts and issues involved in the hearing. See sec. 301.6330-1(e)(1), Proced. & Admin. Regs. Where the validity of the underlying tax liability is not properly at issue, as is the case here, we review the actions of the Appeals Office, including that Office's interpretation of law, for abuse of

[*15] discretion.  See Weber v. Commissioner, 138 T.C. 348, 355 (2012);

Swanson v. Commissioner, 121 T.C. 111, 119 (2003).

Respondent persists in insisting that petitioners altered the Forms CP 504 to delete amounts showing balances owed substantially in excess of the interest shown and paid by petitioners.  Respondent's current records reflect greater balances owing and demand forms sent in November 2009, but they do not include copies of the Forms CP 504 actually sent to petitioners.  Petitioners insist that the forms showed only interest but acknowledge inserting the interest amounts in the "Amount Due" boxes on the forms; they claim that they did so to show the amounts paid.  In their pretrial memorandum, they assert that "[t]he Petitioners simply used the paid CP 504 Notices as a bargaining tool in compromise of the liabilities that could never be paid off in their lifetime."

We cannot determine credibility in this factual dispute without the testimony of petitioners and an opportunity for cross-examination by respondent.  It is not improbable, however, that during the pendency of the Tax Court case dismissed in August 2009 for lack of jurisdiction, assessments for the years in issue did not appear on the accounts.  In its 2011 order affirming the bankruptcy court and quoted in our findings, the Court of Appeals described an erroneous concession by the IRS during the course of the earlier Tax Court case that

**[\*16]** petitioners did not have a liability for 1999 through 2006. That concession may well have been based on incomplete or erroneous records that did not reflect assessments for those years because of the pendency of the Tax Court case. See sec. 6213. We are willing to assume, therefore, that the forms petitioners received for 1999 through 2004 showed only interest. The issue in this case, however, is not whether the settlement officer's suspicions were correct but whether the settlement officer's rejection of the OIC was arbitrary, capricious, or without sound basis in fact or law. Giamelli v. Commissioner, 129 T.C. 107, 111 (2007); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioners argue that the settlement officer should have tried to explain to them why the positions they were taking during the Appeals process were erroneous and that the settlement officer therefore abused his discretion in rejecting the OIC. They state:

> That petitioners altered the title of the 433-A illustrates both their lack of understanding of the applicability of Form 433-A to their circumstances and their distrust of respondent's explanations that the form did apply to them. This was a clear sign to SO Diamantopoulos that he was dealing with taxpayers who were prone to misinterpretation of the rules and regulations applicable to them. He could, and perhaps should, have taken care to ensure that he explained himself clearly to them going forward. That he did not do so is at the core of the origin of this litigation.

**[*17]** Their argument is based on the assertion that petitioners were unsophisticated and sincerely confused lay persons. They acknowledge the "almost belligerent tone of their cover letter sent along" with the OIC. They characterize the 1999 through 2004 forms as "ancillary to the offer, as they pertained to years not covered by the OIC". They assert that the offer included only years 2005 and 2006 because they doubted that the IRS could collect for earlier years, not because they denied liability for those years. They fault the settlement officer for not returning the offer to them with an explanation that they should include the other years as well.

With respect to the period of delay between the settlement officer's June 2011 letter, petitioners' response that any hearing would be premature, and the settlement officer's February 2012 letter, during which time the settlement officer researched petitioners' accounts and the bankruptcy proceedings, petitioners state:

> SO Diamantopoulos had sufficient information from and about petitioners that he knew or should have known that they were combative and that they had specific beliefs regarding their tax liabilities. Petitioners requested a face-to-face CDP hearing with him that would have afforded them the opportunity to attempt to persuade SO Diamantopoulos of the correctness of their views, but he ignored that request and instead pushed them into submitting an OIC. Just as importantly, by denying petitioners the opportunity to meet with him, SO Diamantopoulos evaded an opportunity to explain petitioners' errors to them. All he had to do was to respond to their letter that the bankruptcy appeal did not preclude IRS from pursuing collection

**[*18]** action and that they should still meet with him on August 5, 2011. Instead, he chose not to respond.

They conclude that the settlement officer "was the Service professional in this matter, and as such, he was in a position to explain to the taxpayers where they were in error vis-à-vis their assertions regarding the collectability of their 1995 through 2004 taxes."

By the time they submitted their OIC in 2012, petitioners knew that their liabilities had been confirmed by the bankruptcy court and the Court of Appeals. They were precluded from disputing them in a proceeding under section 6330, a section they cited frequently in their correspondence with the settlement officer and in their filings in this Court. See sec. 6330(c)(2)(B). They also knew from the opinion of the Court of Appeals that they could not rely on errors by the IRS to erase their liabilities. They undoubtedly recognized that Forms CP 504 showing only interest were erroneous. They knew that the greater balances owed and unpaid, based upon the returns that they had filed for 1999 through 2004, were still outstanding.

Petitioners admit that they altered the "Amount Due" boxes on the forms so that the amounts shown as due were the amounts that they submitted in payment. In view of Pansier's history of submitting false documents and the settlement

[*19] officer's verification of the amounts actually due far in excess of the amounts shown on the forms, it was not unreasonable for the settlement officer to conclude that petitioners had deliberately misrepresented their total liabilities in submitting the OIC.

The record in this case and the history of petitioners' disputes with the IRS demonstrate that petitioners would be unwilling to accept any disagreement with their strongly held convictions that they were right. They rejected or ignored the holdings of the District Court, the bankruptcy court, the Court of Appeals, and this Court. They sent lengthy letters to various IRS offices and filed numerous and repetitive motions in this case that purported to cite cases and legal authorities, thus asserting their familiarity with the law. They engaged in hostile, obstructive, and frivolous conduct at every stage of the proceedings. We do not accept the suggestion that the settlement officer could have persuaded them to change their position or should have engaged in further attempts to do so. Endless indulgence of their combative tactics, or a remand by this Court for the purpose of reconsideration, would be futile. See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001). Considering all of the circumstances, we conclude that the settlement officer did not act arbitrarily or capriciously and that there were sound reasons for

**[*20]** rejecting the OIC.  We cannot conclude that the notices of determination were an abuse of discretion.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.